## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JACLYN BJORKLUND, | : | **CASE NO. 2:23-cv-01020** |
| | : | |
| *Plaintiff,* | : | JUDGE JAMES D. CAIN, JR. |
| v. | : | |
| | : | MAGISTRATE JUDGE KATHLEEN KAY |
| NOVO NORDISK A/S, NOVO | : | |
| NORDISK NORTH AMERICA | : | |
| OPERATIONS A/S, NOVO NORDISK | : | |
| US HOLDINGS INC., NOVO NORDISK | : | |
| US COMMERCIAL HOLDINGS INC., | : | |
| NOVO NORDISK INC., NOVO | : | |
| NORDISK RESEARCH CENTER | : | |
| SEATTLE, INC., NOVO NORDISK | : | |
| PHARMACEUTICAL INDUSTRIES LP, | : | |
| and ELI LILLY AND COMPANY, | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

---

## DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM
## IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

---

**PLAUCHÉ, SMITH & NIESET, LLC**
Christopher P. Ieyoub (#16978)
V. Ed McGuire, III (#23861)
Peyton N. Robertson (#39315)
1123 Pithon Street
Lake Charles, LA 70601
Telephone: (337) 436-0522
Facsimile: (337) 436-9637

**KIRKLAND & ELLIS LLP**
James F. Hurst, P.C. (*pro hac vice pending*)
Renee D. Smith (*pro hac vice*)
Diana M. Watral, P.C. (*pro hac vice*)
300 North LaSalle
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant Eli Lilly and Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**INTRODUCTION** ............................................................................................... 1

**BACKGROUND** ................................................................................................ 3

      A.    Plaintiff Alleges She Was First Prescribed Mounjaro Weeks Before She Filed This Lawsuit—When She Already Had Severe Gastrointestinal Symptoms. .................................................................................. 3

      B.    Plaintiff Admits That Severe Gastrointestinal Events Are "Well Known Side Effects" Of Mounjaro And Other Medicines In The GLP-1-Inhibitor Class. ......................................................................................... 5

            1.    Published Medical Literature And Mainstream Media............................. 5

            2.    The FDA-Approved Mounjaro Label. ...................................................... 7

**LEGAL STANDARD** ....................................................................................... 9

**ARGUMENT** ................................................................................................... 10

**I.**      **The Failure To Warn Claim Is Preempted By Federal Law.** ................... 10

**II.**     **The Failure To Warn Claim Also Is Barred By The Learned Intermediary Doctrine.** ......................................................................... 13

      A.    Plaintiff's Own Allegations Are Irreconcilable With Any Additional Duty To Warn Here. ................................................................................. 14

      B.    Plaintiff Does Not Sufficiently Or Plausibly Allege That A Different Label Would Have Altered Her Physician's Prescribing Decision. ............................... 17

**III.**    **The Express Warranty Is Insufficiently Pled.** ................................................. 18

**IV.**    **The Complaint Is An Improper "Shotgun" Pleading.** .................................. 20

**V.**      **Punitive Damages And Attorneys' Fees Are Not Available Here.** ............. 21

**CONCLUSION** ................................................................................................ 22

**CERTIFICATE OF SERVICE** ...................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................9

*Bladen v. C.B. Fleet Holding Co.*,
   487 F. Supp. 2d 759 (W.D. La. 2007)......................................................22

*Brooks v. Amgen, Inc.*,
   2019 WL 507491 (M.D. La. Feb. 8, 2019) ..............................................18

*Cain v. City of New Orleans*,
   2016 WL 2849478 (E.D. La. May 13, 2016)............................................21

*Celino v. Biotronik, Inc.*,
   536 F. Supp. 3d 89 (E.D. La. 2021).........................................................17

*Cheeks v. Bayer Corp.*,
   2003 WL 1748460 (E.D. La. Mar. 28, 2003) ...........................................22

*Doe v. AstraZeneca Pharms., LP*,
   2015 WL 4661814 (E.D. La. Aug. 5, 2015) .............................................19

*Dubroc v. Bristol-Myers Squibb*,
   2019 WL 3756469 (M.D. La. Aug. 8, 2019) ............................................19

*Flagg v. Stryker Corp.*,
   647 F. App'x 314 (5th Cir. 2016) ............................................................17

*Fuller v. Eisai Inc.*,
   513 F. Supp. 3d 710 (E.D. La. 2021)...................................................19, 20

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) ....................................................................7

*Garig v. Travis*,
   2021 WL 2708910 (M.D. La. June 30, 2021)..........................................3, 21

*Jackson v. Johnson & Johnson*,
   2012 WL 2428262 (W.D. La. June 25, 2012) ...........................................16

*Lewis v. Baxter Int'l Inc.*,
2017 WL 661324 (E.D. La. Feb. 17, 2017) ...........................................................19

*Lussan v. Merck Sharp & Dohme Corp.*,
2017 WL 2377504 (E.D. La. June 1, 2017)............................................................18

*Newell v. Acadiana Plan. Comm'n Inc.*,
637 F. Supp. 3d 419 (W.D. La. 2022)...............................................................6, 15

*Noble Cap. Tex. Real Est. Income Fund LP v. Newman*,
2023 WL 3035411 (W.D. Tex. Jan. 13, 2023) ......................................................20

*Pellegrin v. C.R. Bard, Inc.*,
2018 WL 3046570 (E.D. La. June 20, 2018)................................................3, 18, 19

*Pierot v. Gilead Sciences, Inc.*,
2019 WL 1123148 (W.D. La. Mar. 11, 2019) .........................................................8

*Pierre v. Medtronic, Inc.*,
2018 WL 1911829 (E.D. La. Apr. 23, 2018) .........................................................22

*Rhodes v. Covidien LP*,
2019 WL 2162845 (E.D. La. May 17, 2019).........................................................18

*Shively v. Ethicon, Inc.*,
2018 WL 6816083 (W.D. La. Dec. 27, 2018) .......................................................22

*Smith v. GE Healthcare Inc.*,
2020 WL 1880787 (W.D. La. Mar. 31, 2020) .............................................. *passim*

*Smith v. GE Healthcare Inc., et al.*,
2020 WL 1875644 (W.D. La. Apr. 15, 2020)..........................................................2

*Sons v. Medtronic*,
915 F. Supp. 2d 776 (W.D. La. 2013).....................................................................7

*Stahl v. Novartis Pharms. Corp.*,
283 F.3d 254 (5th Cir. 2002) .............................................................2, 13, 14, 16

*Thomas v. Bracco Diagnostics Inc.*,
2020 WL 1016273 (W.D. La. Feb. 27, 2020)................................................ *passim*

*Thomas v. Bracco Diagnostics Inc.*,
2020 WL 1243389 (W.D. La. Mar. 13, 2020) ........................................................2

*Vesoulis v. ReShape Lifesciences, Inc.*,
2021 WL 1909725 (E.D. La. May 12, 2021), *aff'd*, 2022 WL 989465 (5th Cir.
Apr. 1, 2022) ..................................................................................................14, 17

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
   792 F.3d 1313 (11th Cir. 2015) .........................................................21

*Willett v. Baxter Int'l, Inc.*,
   929 F.2d 1094 (5th Cir. 1991) .........................................................14

*Wyeth v. Levine*,
   555 U.S. 555 (2009).............................................................2, 10, 11

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
   57 F.4th 327 (1st Cir. 2023)......................................................11, 13

**Statutes**

La. Rev. Stat. Ann. § 9:2800.57(B) ..................................................14

La. Stat. Ann. § 9:2800.53(5) ...........................................................22

La. Stat. Ann. § 9:2800.58 ...............................................................18

La. Stat. Ann. § 9:2800.58(6) ...........................................................19

Louisiana Products Liability Act, La. R.S. § 9:2800.57 .........................3

Louisiana Products Liability Act, La. R.S. § 9:2800.58 .........................3

**Rules**

Fed. R. Civ. P. 8(a)(2).....................................................................20

Fed. R. Civ. P. 10(b) .......................................................................20

**Other Authorities**

21 C.F.R. § 314:3(b) .......................................................................11

**INTRODUCTION**

Mounjaro is a prescription medicine approved by the FDA to treat adults with type 2 diabetes, a chronic disease that affects more than 30 million Americans.  Plaintiff claims that Eli Lilly and Company ("Lilly"), the manufacturer of Mounjaro, failed to warn about the risks of severe gastrointestinal symptoms.   These symptoms include vomiting and gastroparesis (a condition that Plaintiff alleges is the same as delayed gastric emptying).

The claims against Lilly trail the primary ones about Ozempic—a different medicine made by a different company, Novo Nordisk ("Novo").  Specifically, Plaintiff alleges she used Ozempic for over a year before switching to Mounjaro, and that Ozempic caused severe gastrointestinal events, including vomiting and gastroparesis, *before she ever used Mounjaro*.   Plaintiff nonetheless appends Lilly to a roster of Novo-related defendants—claiming she was prescribed Mounjaro just weeks before filing this lawsuit—even though Mounjaro's FDA-approved label discloses risks of the exact symptoms Plaintiff alleges and which were already widely known in the medical community: Mounjaro (i) is associated with "severe" "gastrointestinal adverse reactions;" (ii) "may cause serious side effects," including vomiting and "severe stomach problems;" (iii) "delays gastric emptying;" and (iv) "is not recommended" in patients "with severe gastrointestinal disease, including severe gastroparesis."

In short, Plaintiff is suing Lilly because she claims she was prescribed Mounjaro, which was "not recommended" for her in the first place, and allegedly had severe gastrointestinal symptoms—symptoms that she had already experienced when using Ozempic, which were widely known in the medical community, and about which Mounjaro's label specifically warned.  Naming Lilly in this lawsuit is thus a meritless afterthought, unsupported and contradicted by the allegations of the Complaint and materials incorporated therein by reference.

The Court should dismiss all claims against Lilly with prejudice.

*First*, federal preemption principles bar the failure to warn claim.  The FDA approved Mounjaro's label on May 13, 2022, just over a year before Plaintiff allegedly used Mounjaro in July 2023.  As matter of federal law, Lilly could not unilaterally change the Mounjaro label unless it had "newly acquired information," as defined in the FDA's "changes being effected" (CBE) regulation.  *Wyeth v. Levine*, 555 U.S. 555, 568 (2009).  But Plaintiff does not identify any "newly acquired information" between the date of FDA approval and her use of Mounjaro that "reveal[s] risks of a different type or greater severity or frequency than previously included in submissions to the FDA."  *Smith v. GE Healthcare Inc.*, 2020 WL 1880787, at *6 (W.D. La. Mar. 31, 2020); *R&R adopted*, *Smith v. GE Healthcare Inc.*, *et al.*, 2020 WL 1875644 (W.D. La. Apr. 15, 2020). Because Plaintiff does not plausibly plead that Lilly could have "unilaterally changed the label," the failure to warn claim must be dismissed as preempted.  *See id.*

*Second*, under Louisiana's learned intermediary doctrine, "a drug manufacturer discharges its duty to consumers by reasonably informing prescribing physicians of the dangers of harm from a drug."  *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 265 (5th Cir. 2002).  But there is no additional duty to warn of risks that are "within the knowledge of or obvious to the average learned intermediate."  *Id*. at 268.  "Simply taking [Plaintiff's] allegations at face value," the label warned about and the medical community "was well aware of the alleged risk of which Plaintiff complains" long before she was prescribed Mounjaro.  Thus, based on Plaintiff's "own allegations," the "failure to warn claim is barred by the learned intermediary doctrine."  *Thomas v. Bracco Diagnostics Inc.*, 2020 WL 1016273, at *4 (W.D. La. Feb. 27, 2020); *R&R adopted*, 2020 WL 1243389 (W.D. La. Mar. 13, 2020).  In addition, to the extent there was an additional duty to warn, the claim still fails under the learned intermediary doctrine because Plaintiff does

not sufficiently allege that a different warning would have altered her physician's prescribing decision.

*Third*, the express warranty claim fails because Plaintiff does not "specify the warranty in question and explain why the warranty is untrue," and generic boilerplate claims that all "Defendants" represented that Ozempic and Mounjaro were "safe" are insufficient. *See Pellegrin v. C.R. Bard, Inc.*, 2018 WL 3046570, at *6 (E.D. La. June 20, 2018).

*Fourth*, the entire Complaint should be dismissed because it is a "shotgun" pleading that improperly asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Garig v. Travis*, 2021 WL 2708910, at *17 (M.D. La. June 30, 2021).

*Fifth*, the Court should dismiss the claims for punitive damages and attorneys' fees because it is black-letter law that such damages are not available under the Louisiana Products Liability Act ("LPLA"), La. R.S. §§ 9:2800.57 & 9:2800.58.

## BACKGROUND

### A.   Plaintiff Alleges She Was First Prescribed Mounjaro Weeks Before She Filed This Lawsuit—When She Already Had Severe Gastrointestinal Symptoms.

On May 13, 2022, the FDA approved Mounjaro (tirzepatide) as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.  Am. Compl. (ECF No. 5, "FAC") ¶¶ 3, 37, 109.  In clinical trials, Mounjaro delivered superior and consistent A1C (blood sugar level) reductions versus all comparators, providing a significant treatment option for people living with type 2 diabetes.[1]  Mounjaro is part of a class of drugs called GLP-1 receptor agonists or "GLP-1 RAs," *id.* ¶¶ 6, 57, and is the first FDA-approved GLP-1 RA that works by

---

[1]   Ex. 2, May 13, 2022, press release, avail. at https://investor.lilly.com/news-releases/news-release-details/fda-approves-lillys-mounjarotm-tirzepatide-injection-first-and (cited in FAC ¶ 38).

targeting both GLP-1 and GIP (glucose-dependent insulinotropic polypeptide).  *Id.* ¶¶ 5, 57. Ozempic (semaglutide) is also part of the GLP-1 class and was approved as a type 2 diabetes treatment by the FDA in December 2017.  *Id.* ¶¶ 6, 33.  Unlike Mounjaro, Ozempic targets only GLP-1 receptors.  *Id.* ¶¶ 32, 50 n.25.

Plaintiff is an adult who was allegedly prescribed Ozempic for more than a year and later, briefly, Mounjaro for an FDA-approved (on-label) indication to treat type 2 diabetes.  *Id.* ¶¶ 11, 109.  Plaintiff alleges she stopped Ozempic "use in or around July 2023, at which point she began using Mounjaro."  *Id.* ¶ 11.  Plaintiff filed this lawsuit on August 3, 2023.  ECF No. 1.  In other words, Plaintiff alleges that she first was prescribed Mounjaro less than a month before she filed this lawsuit, after using a different, non-Lilly product for over a year.  *See id.*

In the original complaint (ECF No. 1), Plaintiff alleged Ozempic and Mounjaro "caused severe gastrointestinal events," focusing on "excessive vomiting."  *Id*. ¶¶ 14, 15, 37, 39, 58-61, 72, 77.  While the original complaint mentioned "gastroparesis" a handful of times, it did not allege that Plaintiff herself had gastroparesis.  *See generally* ECF No. 1.  In the amended complaint filed three weeks later, Plaintiff no longer focused on "severe gastrointestinal events," and instead made a new claim that she had gastroparesis—a condition whose "most common known cause" is diabetes.[2]  *Compare* ECF No. 1 ¶¶ 14, 15, 37, 39, 58-61, 72, 77; *with* FAC ¶¶ 13, 14, 36, 37, 81-84, 97, 102.  The Amended Complaint recharacterizes the vomiting and other symptoms as "sequelae" of gastroparesis, instead of "severe gastrointestinal events."  For example, Plaintiff alleges that, "[a]s a result of using Defendants' Ozempic and Mounjaro," she suffers from "gastroparesis and its sequelae," including "severe" or "violent" vomiting, stomach pain, and

---

[2]  *See* Ex. 3, M. Camilleri, *Gastroparesis*, Nat'l institute of Diabetes and Digestive and Kidney Diseases (NIDDKD), avail. at https://www.niddk.nih.gov/health-information/digestive-diseases/gastroparesis, (cited in FAC at ¶ 80 n.46).

gastrointestinal burning.  FAC ¶¶ 13-14.  But the crux of Plaintiff's claims and this lawsuit is severe gastrointestinal symptoms, including "extreme and violent" vomiting and stomach pain.  *Id.* ¶ 14.

Plaintiff brings claims for inadequate warnings and breach of express warranty under the LPLA.  Plaintiff sues six Novo entities, and names Lilly, the maker of Mounjaro, as a seventh defendant.

**B.  Plaintiff Admits That Severe Gastrointestinal Events Are "Well Known Side Effects" Of Mounjaro And Other Medicines In The GLP-1-Inhibitor Class.**

Plaintiff alleges that "gastrointestinal events are well known side effects of the GLP-1 class."  FAC ¶ 7.  In addition, the Complaint and materials incorporated by reference show the risks of severe gastrointestinal events (including those which Plaintiff allegedly experienced) were disclosed and widely known to the medical community through published medical literature, mainstream media, and the Mounjaro label itself.

**1.  Published Medical Literature And Mainstream Media.**

The Complaint cites and quotes more than a dozen published medical articles that reported severe gastrointestinal events as risks for GLP-1 medications.  *See, e.g.*, FAC ¶ 69 (referencing September 2020 article that reported "more patients permanently discontinued taking oral semaglutide than placebo due to adverse events," and "[t]he most common adverse events associated with semaglutide were nausea, vomiting, and diarrhea"); *id.* ¶ 70 (stating that "[a] July 2021 article" "concluded that 'gastrointestinal disturbances' were 'well-known' side effects associated with semaglutide use," specifically citing incidence rates of nausea, vomiting, and diarrhea, and that "[o]verall, the percentage of patients experiencing adverse events that led to trial product discontinuation was greatest for GI-related adverse events, with some trials experiencing 100% discontinuation . . . due to GI-related adverse events"); *id.* ¶¶ 71-73 (referencing an October

2021 article discussing two case reports of semaglutide patients with "fullness, bloating, and nausea" and delayed gastric emptying).[3]

Published reports of vomiting and other severe gastrointestinal events associated with GLP-1 medications continued in the time before Plaintiff's alleged first use of Mounjaro in July 2023.[4]  The Complaint cites published reports (including in mainstream media, like NBC News and *The New York Times*) of patients who had "unbearable" gastrointestinal symptoms.  *See, e.g.*, FAC ¶ 85 n.51 (citing Jan. 29, 2023, NBC News story reporting on patient who was "unable to move off the bathroom floor because she had 'vomited so much that [she] didn't have the energy to get up.'"); *id.* ¶ 46 n.21 (citing Nov. 22, 2022, *New York Times* article quoting physician who "had seen some [Ozempic] patients with such severe vomiting that they had to stop taking the medication"); *id.* ¶ 55 n.29 (quoting April 11, 2023, *New York Times* article reporting that certain patients taking Mounjaro "commonly experience nausea, vomiting, diarrhea and stomach pain").[5]

---

[3]  *See also id.* ¶ 69 n.389 (citing Ex. 4, Mosenzon O, Miller EM, & Warren ML, *Oral semaglutide in patients with type 2 diabetes and cardiovascular disease, renal impairment, or other comorbidities, and in older patients*, Postgraduate Medicine, avail. at https://www.tandfonline.com/doi/full/10.1080/00325481.2020.1800286); *id.* ¶ 70 n.39 (citing Ex. 5, Smits MM & Van Raalte DH, *Safety of Semaglutide*, avail. at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8294388/.

[4]  The Court should consider documents attached as exhibits to this motion to dismiss as part of the pleadings because "they are referred to in the plaintiff's complaint and are central to [her] claim."  *Newell v. Acadiana Plan. Comm'n Inc.*, 637 F. Supp. 3d 419, 431-32 (W.D. La. 2022) (internal citations and quotations omitted).  And when the allegations are "contradicted by facts disclosed" in exhibits that are "treated as part of the complaint, the allegations are not admitted as true." *Id.*

[5]  Plaintiff also cites articles from July 25, 2023, reporting on potential risks of "severe gastroparesis" or "stomach paralysis" in patients taking GLP-1 RAs.  *See* FAC ¶¶ 75, n.44, 76 n.45.  Plaintiff does not allege whether she was prescribed Mounjaro before or after these articles were published.  *Id.* ¶ 11.

Plaintiff's allegations reflect widely known risks of gastroparesis, too.  Plaintiff asserts that "[i]t is well documented in the literature that GLP-1 RAs cause delayed gastric emptying"—a condition that she alleges is the same as gastroparesis[6]—including in "published medical literature" dating back more than a decade before Mounjaro allegedly was first prescribed to Plaintiff in July 2023.  *Id.* ¶¶ 11, 37, 59, 60, 80.  For example, Plaintiff alleges:

- "As early as 2010"—13 years before Plaintiff allegedly was prescribed Mounjaro—"a study published in The Journal of Clinical Endocrinology & Metabolism indicated that GLP-1 slows gastric emptying" (FAC ¶ 61);

- "[A] study published in October 2017"—more than five years before Plaintiff was allegedly prescribed Mounjaro—"explained that 'GLP-1 suppresses gastric emptying by inhibiting peristalsis of the stomach while increasing tonic contraction of the pyloric region'" (*id.* ¶ 60);

- "In August 2020"—nearly three years before Plaintiff was allegedly prescribed Mounjaro—"medical literature advised that . . . this [GLP-1] class of drugs can exacerbate the symptoms of diabetic gastroparesis," and thus "GLP-1 receptor agonist therapy is not recommended for people who experience symptoms of gastroparesis" (*id.* ¶ 68);

- "An October 2021 article in the Journal of Investigative Medicine ('JIM')"—more than a year before Plaintiff was allegedly prescribed Mounjaro—stated that "both diabetes and GLP-1 RAs can cause delayed gastric emptying," and "review[ed] two case reports" finding gastroparesis was induced by GLP-1 RAs (*id.* ¶¶ 71-73).

### 2.     **The FDA-Approved Mounjaro Label.**

The FDA-approved Mounjaro label—which is repeatedly referenced in the Complaint (*see, e.g. id.* ¶¶ 7 n.1, 31 n.6, 90) and is central to Plaintiff's claims against Lilly—also warns of these well-known gastrointestinal risks, including the same symptoms Plaintiff alleges.[7]

---

[6]  Lilly does not necessarily agree with Plaintiff's characterizations in the Complaint, but accepts them as true for purposes of this motion to dismiss.

[7]  The Court may take judicial notice of documents, such as the FDA-approved Mounjaro label, that are publicly available on the FDA's website.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (courts may take "judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand"); *Sons v. Medtronic*, 915 F. Supp. 2d 776, 781 (W.D. La. 2013) (court "may take judicial notice of and consider the public records of the FDA . . . without transforming a [motion to dismiss] into a

*First*, the Mounjaro label repeatedly discloses the risk of "severe gastrointestinal disease" and "serious side effects," including "severe stomach problems."  See Ex. 1 at 1 ("Severe Gastrointestinal Disease: Use may be associated with gastrointestinal adverse reactions, sometimes severe."); *id.* at 4 ("Severe Gastrointestinal Disease: Use of MOUNJARO has been associated with gastrointestinal reactions, sometimes severe."); *id.* at pdf pp. 22-23 (MOUNJARO may cause serious side effects, including: . . . severe stomach problems").  The Patient Counseling Information—which is part of the label and sets out information that the prescriber should discuss with the patient—also expressly instructs the prescriber to "[i]nform patients of the potential risk of severe gastrointestinal adverse reactions."[8]  *Id.* at 18.

*Second*, the Mounjaro label repeatedly and specifically warns of vomiting and stomach pain, which are listed as two of the "most common side effects" of Mounjaro.  *See* Ex. 1 at 1, 4, 18, pdf pp. 22-23.  Plaintiff even concedes the "Mounjaro label lists nausea, diarrhea, decreased appetite, vomiting, constipation, dyspepsia, and abdominal pain as common adverse reactions."  *See* FAC ¶ 90.  And the label's Adverse Reactions section includes these side effects.  *See* Ex. 1 at 1 ("The most common adverse reactions, reported in >5% of all patients treated with MOUNJARO are: nausea, diarrhea, decreased appetite, vomiting, constipation, dyspepsia, and abdominal pain."); *id.* at 5-6 Table 1 (reporting percentages of reported adverse reactions, including Nausea (12%-18%); Vomiting (5%-9%); and Abdominal Pain (5-6%); *id*. at 6 ("In the pool of placebo-controlled trials, gastrointestinal adverse reactions occurred more frequently

motion for summary judgment."); *Pierot v. Gilead Sciences, Inc.*, 2019 WL 1123148, at *3 (W.D. La. Mar. 11, 2019) (taking judicial notice of FDA-approved labels available on the FDA website and relevant to adequacy of warning).

[8]  The Patient Counseling Information also instructs the prescriber to advise the patient to read the Medication Guide, which contains information on relevant side effects.

among patients receiving MOUNJARO than placebo . . . More patients receiving MOUNJARO . . . discontinued treatment due to gastrointestinal adverse reactions than patients receiving placebo . . . .  The majority of reports of nausea, vomiting, and/or diarrhea occurred during dose escalation and decreased over time.").  The FDA-approved Medication Guide given to patients similarly states that "[t]he most common side effects of MOUNJARO include:" "nausea," "vomiting," and "stomach (abdominal) pain." *Id*. at pdf pg. 23.

*Third*, the Mounjaro label warns about delayed gastric emptying, too.  According to Plaintiff, "[g]astroparesis may also be called delayed gastric emptying."  FAC ¶ 80.  The label states at least four times that Mounjaro "delays gastric emptying."  Ex. 1 at 7 ("MOUNJARO delays gastric emptying"); *id.* at 8 ("MOUNJARO may reduce the efficacy of oral hormonal contraceptives due to delayed gastric emptying"); *id.* at 11 ("*Gastric Emptying*: Tirzepatide delays gastric emptying"); *id.* ("MOUNJARO delays gastric emptying").  And the label warns providers not to prescribe Mounjaro for patients who are already experiencing severe gastroparesis: "MOUNJARO has not been studied in patients with severe gastrointestinal disease, including severe gastroparesis, and is therefore not recommended in these patients." *Id*. at 4.  The Medication Guide further advises patients: "Before using MOUNJARO, tell your healthcare provider about all of your medical conditions including if you: . . . have severe problems with your stomach, such as slowed emptying of your stomach (gastroparesis) or problems with digesting food." *Id.* at pdf pg. 21.

Simply put, the Mounjaro label warns about the very conditions that Plaintiff now alleges she experienced.

## LEGAL STANDARD

Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  On a motion to dismiss, the Court

should conduct a "context specific" analysis that draws on its "judicial experience and common sense" to determine whether the allegations remaining after the legal conclusions are stripped away "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In making this determination, the Court may consider the allegations in the Complaint (including documents incorporated by reference), matters of judicial notice, and documents "referred to in the plaintiff's complaint and [that] are central to [the] claim." *Thomas*, 2020 WL 1016273, at *2.

<u>**ARGUMENT**</u>

**I.     THE FAILURE TO WARN CLAIM IS PREEMPTED BY FEDERAL LAW.**

Plaintiff's failure to warn claim is barred by federal preemption principles.  "The FDA, pursuant to the Federal Food, Drug, and Cosmetic Act ('FDCA'), is charged with the oversight of pharmaceutical and medical device production, sales, labeling, and marketing." *Smith*, 2020 WL 1880787, at *4.  Before a new drug can be sold in the United States, the FDA must approve "a new drug application" that "includes the approval of the exact text in the proposed label." *Wyeth*, 555 U.S. at 568.  If a manufacturer wishes to change the contents of an approved label, it must submit a supplemental application to the FDA.  "Generally speaking, a manufacturer may only change a drug label after the FDA approves a supplemental application." *Id*.  In those circumstances, federal law preempts any state-law claims that a manufacturer should have added or strengthened a warning on a drug's label, because it would be "impossible" for a manufacturer to "comply with the [alleged] state-law duty to modify [the drug's] labeling without violating federal law." *Id*. at 563.

Federal preemption of state law comes from the United States Constitution's Supremacy Clause, which declares federal law to "be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2.  The sole exception to the federal prohibition on unilateral label changes is the FDA's "changes being effected" (CBE) regulation.  Under certain limited circumstances, the CBE regulation

permits a manufacturer to change a label before the agency has acted on the supplemental application. *Wyeth*, 555 U.S. at 563. Any change made under the CBE regulation must be based on "newly acquired information," which the FDA defines as "data, analyses, or other information not previously submitted to the Agency, which may include (but is not limited to) data derived from clinical studies, reports of adverse events, or new analyses of previously submitted data (e.g., meta-analyses) if the studies, events, or analyses ***reveal risks of a different type or greater severity or frequency than previously included in submissions to the FDA****.*" *Smith*, 2020 WL 1880787, at *6 (quoting 21 C.F.R. § 314:3(b)) (emphasis added).

A plaintiff must, therefore, allege the existence of "newly acquired information," within the meaning of the CBE regulation, to demonstrate that a unilateral label change was not impossible. This is the "first step" of the preemption analysis. *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 57 F.4th 327, 341 (1st Cir. 2023). At the "second step," the defendant can obtain preemption by presenting "clear evidence the FDA would not have approved [the] change to the drug's label." *Id.* (quoting *Wyeth*, 555 U.S. at 571).

Plaintiff's failure to warn claim is preempted at the first step because she does not allege the existence of any "newly acquired information" that would have permitted Lilly to use the CBE regulation to modify the Mounjaro label the FDA approved in May 2022. Plaintiff alleges the "well documented" fact that GLP-1 RAs can cause severe gastrointestinal events, including "delayed gastric emptying," which was known to the FDA *before* the agency approved the label in May 2022. *See* FAC ¶¶ 11, 37 59-61, 68, 70-73.

Judicially noticeable FDA records show that the FDA considered many of the specific journal articles and case reports regarding delayed gastric emptying and gastroparesis cited in the Complaint. For example, Plaintiff alleges that "a phase 1 study of Mounjaro (GPGA) found that

tirzepatide delays gastric emptying" (FAC ¶ 65), but this study was considered and publicly reported by the FDA in connection with its May 2022 approval of Mounjaro.[9]   Plaintiff also alleges that cardiovascular outcomes trials for Wegovy (Novo's GLP-1 RA semaglutide approved for certain weight-management indications) "included two cases of gastroparesis."  FAC ¶ 64.  The FDA published those exact gastroparesis case reports on June 3, 2021.[10]   And an FDA reviewer took note of the reports and even commented—nearly two years before the Mounjaro label was approved—that "[s]emaglutide may be associated with gastroparesis, particularly in vulnerable patients."[11]

Because Plaintiff alleges all of this information was previously submitted to the FDA, it thus cannot be "newly acquired information" that would justify a unilateral label change.  In addition, allegations and references to case reports and journal articles that postdate the FDA's approval of the Mounjaro label in May 2022 *also* cannot be "newly acquired information," because they do not "reveal risks of a different type or greater severity or frequency than previously included in submissions to the FDA."  *Smith*, 2020 WL 1880787, at *6.  Plaintiff alleges that delayed gastric emptying was a "well documented" effect of GLP-1 RAs (FAC ¶ 60), which is why the FDA-approved label for Mounjaro mentions delayed gastric emptying no fewer than four times.  Regarding gastroparesis, Plaintiff alleges that the FDA "has received reports of people on [GLP-1 RAs] experiencing stomach paralysis" over the years (*id*. ¶ 76), and the FDA records

---

[9]   FDA, CDER, Clinical Review(s), NDA No. 215866-0001 at 31, 55-56, 224 avail. at https://www.accessdata.fda.gov/drugsatfda_docs/nda/2022/215866Orig1s000MedR.pdf; FDA, CDER, Summary Review, NDA No. 215866-0001 at 11, 18, 20 avail. at. https://www.accessdata.fda.gov/drugsatfda_docs/nda/2022/215866Orig1s000SumR.pdf.

[10]   FDA, CDER, Clinical Review(s), NDA No. 215256-1000 at 335-36, avail. at https://www.accessdata.fda.gov/drugsatfda_docs/nda/2021/215256Orig1s000MedR.pdf.

[11]   *Id.*

discussed above show the FDA considered reports of gastroparesis in clinical trials of GLP-1 RAs well before it approved the Mounjaro label.  As alleged, a small handful of additional case reports, or journal articles repeating well-documented claims, do not reveal a risk "of a different type or greater severity or frequency" than the risk of which the FDA was already aware in May 2022.

Because Plaintiff identifies "no newly acquired information that would justify invoking the CBE procedure," under the facts pled here, Plaintiff's failure to warn claim is thus preempted and should be dismissed.  *Smith*, 2020 WL 1880787, at *6 (dismissing failure to warn claims because plaintiff "d[id] not plead that [the defendant] had newly acquired information that would have allowed it to change the label under the CBE exception"); *Thomas*, 2020 WL 1016273, at *10 (same); *see also In re Zofran*, 57 F.4th at 341 (affirming summary judgment on preemption grounds).

## II.   THE FAILURE TO WARN CLAIM ALSO IS BARRED BY THE LEARNED INTERMEDIARY DOCTRINE.

Louisiana applies the learned intermediary doctrine to failure to warn claims involving prescription drugs.  This doctrine provides that any manufacturer's duty to warn runs not to the patient but to the patient's physician, and the manufacturer "discharges its duty to consumers by reasonably informing prescribing physicians of the dangers of harm from a drug."  *Stahl*, 238 F.3d at 265.  Under this doctrine, to state a claim for failure to warn here, Plaintiff must allege facts showing both that (1) "the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that ***was not otherwise known to the physician***," and (2) "this failure to warn the physician was both a cause in fact and a proximate cause of the plaintiff's injury."  *Id.* at 265-66 (emphasis added).  Plaintiff does not plausibly allege these elements, which are instead contradicted by the allegations of the Complaint and materials incorporated by reference.

**A.      Plaintiff's Own Allegations Are Irreconcilable With Any Additional Duty To Warn Here.**

"Under Louisiana law, there is no duty to warn of obvious risks."  *Stahl*, 283 F.3d at 268 (citing La. Rev. Stat. Ann. § 9:2800.57(B)).  The LPLA "eliminates any duty 'to provide an adequate warning' about a product when '[t]he product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics.'"  *Vesoulis v. ReShape Lifesciences, Inc.*, 2021 WL 1909725, at *5 (E.D. La. May 12, 2021), *aff'd*, 2022 WL 989465 (5th Cir. Apr. 1, 2022).  In the context of prescription drugs, where warnings are "addressed to a physician acting as a learned intermediary," the Fifth Circuit has "interpreted this 'obvious risk' exception to exclude any duty to warn of risks that are '***within the knowledge of or obvious to the average learned intermediate***.'"  *Stahl*, 283 F.3d at 268 (citing *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098 n.16 (5th Cir. 1991)) (emphasis added).

The Complaint and incorporated materials—including many published articles in the medical literature and mainstream media and the Mounjaro label—show that long before Plaintiff was prescribed Mounjaro in July 2023, it was already widely known in the medical community and among average learned intermediaries that GLP-1 RAs, including Mounjaro, could cause vomiting, delayed gastric emptying, and other severe gastrointestinal symptoms (including in some cases symptoms so severe that the patients discontinued treatment).

*First*, as detailed above and reflected by Plaintiff's own allegations, since GLP-1 RAs were approved more than 15 years ago, the potential gastrointestinal side effects of GLP-1 RAs have been extensively reported in the published medical literature.  FAC ¶¶ 60, 61, 90.  Plaintiff alleges "[i]t is well documented" in the "published medical literature," dating back more than a decade before Mounjaro allegedly was first prescribed to Plaintiff in July 2023, that GLP-1 RAs can cause

severe gastrointestinal events, including vomiting and "delayed gastric emptying" (which Plaintiff alleges is the same as gastroparesis). *Id.* ¶¶ 11, 37, 59, 60, 80. Plaintiff also details published reports (including in mainstream media, such as NBC News and *The New York Times*) of patients who had "unbearable" gastrointestinal symptoms, including severe vomiting. *See, e.g.*, *id.* ¶ 85 n.50-51, ¶ 46 n.21, ¶ 55 n.29.

*Second*, the FDA-approved Mounjaro label also specifically warned of the risks of symptoms and conditions about which Plaintiff complains, complementing information that was already widely known in the medical community, including through the publications Plaintiff cites in the Complaint. The label states that Mounjaro "may be associated with gastrointestinal adverse reactions, sometimes severe," and "may cause" "vomiting and abdominal pain" and other "severe stomach problems," and "delays gastric emptying." *See* Ex. 1, at pp. 1, 4, 7, 11, 18, pdf pp. 21-23. Further, as Plaintiff alleges, the Mounjaro label warns healthcare providers not to prescribe Mounjaro for patients already experiencing severe gastrointestinal symptoms, including gastroparesis, stating: "Mounjaro 'has not been studied' in patients with gastroparesis or other severe gastrointestinal disease, 'and is therefore not recommended in these patients.'" FAC ¶ 7 n.1 (quoting Ex. 1 at 4). Allegations that the label was insufficient because it "does not indicate the severity of the symptoms" or did not warn that Mounjaro "had not been sufficiently and/or adequately tested" for the risks of gastroparesis (*id.* ¶¶ 90, 113, 117) are thus "contradicted by the facts disclosed" by incorporated materials, and "are not admitted as true" for purposes of this motion. *Newell*, 637 F. Supp. 3d at 431-32.

*Third*, Plaintiff claims the label failed to adequately warn of the "sequelae" of gastroparesis, but that fails, too. *See* FAC ¶¶ 8, 22. Plaintiff alleges that medical literature describes "sequelae" of gastroparesis to include the very symptoms warned of in the Mounjaro

label—"nausea, vomiting, abdominal pain, abdominal bloating, severe dehydration, a feeling of fullness after eating just a few bites." *See id.* ¶ 8 n.2 (citing *Gastroparesis*, Mayo Clinic (June 11, 2022)). Because these conditions are "widely recognized to be possible outcomes" of gastroparesis—and the label warns against prescribing to patients with gastroparesis—the "sequelae" are "adequately addressed by the warnings already provided" in the Mounjaro label. *See Stahl*, 283 F.3d at 268 ("[B]ecause liver failure and resulting death are widely recognized to be possible outcomes in a severe case of hepatitis, those risks are adequately addressed by the warnings [of hepatitis] already provided in the Lamisil insert."); *Jackson v. Johnson & Johnson*, 2012 WL 2428262, at *3–4 (W.D. La. June 25, 2012) (finding that any "physician who was warned of serious and occasionally *fatal* reactions" at issue in this case "would find it obvious that there was a possibility that there could be continuing difficulties stemming from effects such as angioedema, airway obstruction, and shortness of breath.").

Other courts in this district have dismissed failure to warn claims under circumstances strikingly similar to those pled here, holding there was no duty to warn. For example, in *Thomas v. Bracco Diagnostics Inc.*, the complaint alleged "a whole host of studies, stretching back as far as 1988" and an FDA "revised Product Labeling with the Medication Guide" that "put the radiology community on 'high alert'" for certain risks before the plaintiff was administered a Gadolinium-Based Contrast Agent ("GBCA"), an intravenous drug used in certain diagnostic imaging procedures. 2020 WL 1016273, at *4. The *Thomas* court held that "[s]imply taking his allegations at face value, Plaintiff cannot show that 'his physician was not warned of a risk associated with [GBCA] that was not otherwise known to the physician.'" *Id.* Instead, "the amended complaint asserts that an entire medical community was well aware of the alleged risk of which Plaintiff complains, had reached this awareness before he was administered [GBCA],

and that the FDA label at the time he was administered [GBCA] specifically warned" of the gadolinium retention about which plaintiff complained.  *Id.*

Here, too, the publicly available information cited in Plaintiff's complaint shows that "an entire medical community was well aware of the alleged risk of which Plaintiff complains" and as a result, "[b]ased on [her] own allegations, Plaintiff's failure to warn claim is barred by the learned intermediary doctrine."  *Id.*; *see also Vesoulis*, 2021 WL 1909725, at *5 (granting summary judgment where there was no evidence in the record that bariatric surgeon "lacked 'ordinary knowledge common to [his] community [of physicians] as to the product's characteristics,'" particularly where the "ReShape's Instructions for Use notified Dr. Lavin that the balloon could cause the injury Vesoulis suffered").

The Court should dismiss Plaintiff's failure to warn claim with prejudice.

**B.    Plaintiff Does Not Sufficiently Or Plausibly Allege That A Different Label Would Have Altered Her Physician's Prescribing Decision.**

The failure to warn claim also should be dismissed for another independent reason: Plaintiff does not sufficiently allege that a different "warning would have changed the decision of the treating physician, *i.e.* that but for the inadequate warning, the treating physician would not have used . . . the product."  *See Celino v. Biotronik, Inc.*, 536 F. Supp. 3d 89, 108 (E.D. La. 2021) (holding that the "failure to allege that [plaintiff's] doctors would not have used the relevant Biotronik devices had they been properly warned is, in fact, fatal to their claim"); *Flagg v. Stryker Corp.*, 647 F. App'x 314, 316 n.3 (5th Cir. 2016) (finding failure to warn and express warranty LPLA claims "properly dismissed" where plaintiff "failed to include any allegations about whether the Manufacturing Defendants failed to warn Flagg's doctor of the risk involved and whether Flagg's doctor would have used the implants if given such a warning").

Plaintiff cannot create a viable failure to warn claim by alleging in undifferentiated conclusory terms that, had her unidentified physician received a different warning (which itself is not specified), then "he/she/they would not have prescribed Ozempic and Mounjaro."  *See* FAC ¶¶ 120-121.  These are precisely the kind of conclusory and "'naked assertions devoid' of the 'factual enhancement' necessary to survive a motion to dismiss."  *Pellegrin*, 2018 WL 3046570, at *4 (granting motion to dismiss where plaintiff alleged only that, "had defendants adequately warned the plaintiff's healthcare providers of the risks associated with the product, the healthcare providers, acting as reasonably prudent healthcare providers, would have elected not to use the product"); *Rhodes v. Covidien LP*, 2019 WL 2162845, at *4 (E.D. La. May 17, 2019) (dismissing failure to warn and express warranty claims where plaintiff "does not allege how defendants' alleged failure to warn specifically caused his injuries—*i.e.* facts showing that a 'proper warning would have changed the decision of the treating physician'"); *Brooks v. Amgen, Inc.*, 2019 WL 507491, at *3-4 (M.D. La. Feb. 8, 2019) ("conclusory" "naked assertions" that a different label would have altered the prescribing decision are insufficient to state failure to warn claim).

In short, because Plaintiff has not pleaded with any specificity how a different warning would have changed her physician's decision to prescribe Mounjaro, the failure to warn claim should be dismissed on this ground too.

## III.    THE EXPRESS WARRANTY IS INSUFFICIENTLY PLED.

Plaintiff's claim for breach of express warranty under the LPLA also should be dismissed. To state a claim for breach of express warranty, Plaintiff must plausibly plead that (1) there was an express warranty made by the manufacturer about the product; (2) the express warranty induced the plaintiff to use the product; and (3) the plaintiff's damage was proximately caused because the express warranty was untrue.  La. Stat. Ann. § 9:2800.58; *see also Lussan v. Merck Sharp & Dohme Corp.*, 2017 WL 2377504, at *3 (E.D. La. June 1, 2017).

Plaintiff's express warranty claim combines "Defendants" together and generically alleges that they "warranted" that "Ozempic and Mounjaro were safe as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus." FAC ¶ 134. This express warranty claim is insufficiently pled under the LPLA.

Fundamentally, Plaintiff does not specify the content of any alleged express warranty. *See Dubroc v. Bristol-Myers Squibb*, 2019 WL 3756469, at *6 (M.D. La. Aug. 8, 2019). Plaintiff does not identify any statement that "represents, affirms, or promises that the product" "possesses specified characteristics or qualities or will meet a specified level of performance," and allegations concerning a "general opinion" or "general praise" about a product are not sufficient to plead breach of an express warranty. *See* La. Stat. Ann. § 9:2800.58(6). Plaintiff instead alleges Defendants collectively "warranted" that "Ozempic and Mounjaro were safe" (FAC ¶ 134), and at the same time alleges that the label warned about the very side effects that Plaintiff allegedly suffered (FAC ¶¶ 14, 90).

Courts applying Louisiana law have repeatedly dismissed express warranty claims based on similar statements. *See, e.g.*, *Fuller v. Eisai Inc.*, 513 F. Supp. 3d 710, 723 (E.D. La. 2021) ("[C]onclusory allegations like 'Belviq did not conform to Defendants' express warranties that Belviq was safe to use' and 'effective to use'" were insufficient.); *Pellegrin*, 2018 WL 3046570, at *5-6 (holding that representations that the product was safe to use and did not produce side effects "failed to specify the contents of defendants' representations or how they were factually untrue or inadequate"); *Lewis v. Baxter Int'l Inc.*, 2017 WL 661324, at *5 (E.D. La. Feb. 17, 2017) (Fallon, J.) (dismissing express warranty claim where plaintiff pointed only to defendant's statement that product was "suitable and safe for use"); *Doe v. AstraZeneca Pharms., LP*, 2015

WL 4661814, at *4 (E.D. La. Aug. 5, 2015) (dismissing express warranty claim based on assertion that defendant "expressly warranted" that "Seroquel is a safe and effective product").

Moreover, boilerplate allegations that "the express warranties were made to Plaintiff and Plaintiff's prescribing physician by way of Ozempic's and Mounjaro's labels, websites, advertisements, promotional materials, and through other statements" and "induced" her physician to prescribe and her to use Ozempic and Mounjaro" (FAC ¶¶ 135-36) are insufficient.  As one Court put it in similar circumstances:

> [P]laintiffs fail to allege facts that the warranty was made to a specific audience. Other than repeatedly reciting the words "express warranties," the plaintiffs fail to identify the audience to whom the alleged warranties were made.  Was it the FDA? Was it [plaintiff's] physician?  Was it physicians generally?  Was it [plaintiff] herself?  The plaintiffs apparently say it was "all of the above."  And that underscores just how vague their warranty allegation is.

*Fuller*, 513 F. Supp. 3d at 723 (citations omitted).  And Plaintiff's inclusion of the "magic word 'induce,'" "fall[s] short of alleging that [she or her physician] was even 'exposed to' the alleged warranty—which is an obvious predicate to concluding that the warranty induced her to use [Mounjaro]."  *Id.* at 724.

In sum, "[w]ithout more as to the content of the warranty, to whom it was conveyed, or whether [Plaintiff or her physician were] exposed to it and therefore induced by it," the Court "cannot reasonably conclude that the plaintiffs have a plausible breach-of-warranty claim."  *Id*.

## IV.    THE COMPLAINT IS AN IMPROPER "SHOTGUN" PLEADING.

The Court also should dismiss the entire Complaint because it is a scattershot pleading that improperly lumps together allegations and legal conclusions about two different products (Ozempic and Mounjaro) made by different companies (Novo and Lilly).  This disfavored "shotgun" pleading approach violates Rule 8(a)(2) and Rule 10(b), and independently requires dismissal.  *See Noble Cap. Tex. Real Est. Income Fund LP v. Newman*, 2023 WL 3035411, at *3

(W.D. Tex. Jan. 13, 2023) ("Group pleading or shotgun pleading is disfavored—a sin—in the Fifth Circuit.").

The Complaint improperly asserts "'multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions.'" *Garig*, 2021 WL 2708910, at *17 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015)).   For example, Plaintiff alleges that undifferentiated "Defendants" "downplayed the severity" or failed to warn of the risks of gastrointestinal events "caused by" or "from" "Ozempic and Mounjaro."  FAC ¶ 7; *see also id*. Background Headings Parts B, E.  But the Complaint does not make a single factual allegation specific to Mounjaro to support claimed downplaying of gastrointestinal events, nor does it identify specific deficiencies of or proposed alternative warnings for the Mounjaro label.  *See id.* ¶¶ 39-55, 80-97.  The prescribing behavior and express warranty allegations similarly lump Defendants together.  *Id.* ¶¶ 120-21.  And the purported causes and onset of Plaintiff's alleged injuries are likewise collectivized; for example, Plaintiff does not allege whether and to what extent she claims the injuries were caused by Mounjaro.

As a result of this shotgun pleading, the Complaint fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Garig*, 2021 WL 2708910, at *17 (quoting *Weiland*, 792 F.3d at 1323).  This "'theory of collective responsibility' cannot withstand a motion to dismiss." *Cain v. City of New Orleans*, 2016 WL 2849478, at *5 (E.D. La. May 13, 2016).

## V.   PUNITIVE DAMAGES AND ATTORNEYS' FEES ARE NOT AVAILABLE HERE.

Finally, this Court should dismiss Plaintiff's requests for punitive damages and attorneys' fees—neither of which is recoverable under the LPLA.

Courts applying Louisiana law have repeatedly and uniformly recognized that the LPLA does not allow for recovery of punitive damages. *See Shively v. Ethicon, Inc.*, 2018 WL 6816083, at *4 (W.D. La. Dec. 27, 2018) ("The LPLA is clear and unambiguous and does not provide for punitive damages."); *Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 770 (W.D. La. 2007) ("The LPLA, which specifically limits those claims which can be made against a manufacturer for use of its product by a consumer, provides the exclusive theory of liability available against a manufacturer, and does not authorize punitive damages."); *Cheeks v. Bayer Corp.*, 2003 WL 1748460, at *1 (E.D. La. Mar. 28, 2003) (dismissing claims for punitive damages under the LPLA). Attorneys' fees are barred too. The LPLA explicitly provides that "[a]ttorneys' fees are not recoverable under this Chapter." La. Stat. Ann. § 9:2800.53(5); *see also Pierre v. Medtronic, Inc.*, 2018 WL 1911829, at *6 (E.D. La. Apr. 23, 2018).

## **CONCLUSION**

For the foregoing reasons, Lilly respectfully requests the Court dismiss all of the claims against Lilly in the First Amended Complaint with prejudice.

October 26, 2023

*/s/ Christopher P. Ieyoub*
Christopher P. Ieyoub

**PLAUCHÉ, SMITH & NIESET, LLC**
Christopher P. Ieyoub (#16978)
V. Ed McGuire, III (#23861)
Peyton N. Robertson (#39315)
1123 Pithon Street
Lake Charles, LA 70601
Telephone: (337) 436-0522
Facsimile: (337) 436-9637

**KIRKLAND & ELLIS LLP**
James F. Hurst, P.C. (*pro hac vice pending*)
Renee D. Smith (*pro hac vice*)
Diana M. Watral, P.C. (*pro hac vice*)
300 North LaSalle
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant Eli Lilly and Company*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2023, the foregoing **DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT** was filed via the Court's ECF/CM filing system, which electronically served all counsel of record.


/s/ *Christopher P. Ieyoub*
  Christopher P. Ieyoub

24