**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

JACLYN BJORKLUND,                                    Case No. 2:23-cv-01020

             *Plaintiff*,                            Judge James D. Cain, Jr.

v.                                                   Magistrate Judge Kathleen Kay

NOVO NORDISK A/S, NOVO NORDISK
NORTH AMERICA OPERATIONS A/S,
NOVO NORDISK US HOLDINGS INC.,
NOVO NORDISK US COMMERCIAL
HOLDINGS INC., NOVO NORDISK INC.,
NOVO NORDISK RESEARCH CENTER
SEATTLE, INC., NOVO NORDISK
PHARMACEUTICAL INDUSTRIES LP,
and ELI LILLY AND COMPANY,

             *Defendants*.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT ELI LILLY AND**
**COMPANY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

FIRST AMENDED COMPLAINT ALLEGATIONS .................................................... 1

LEGAL STANDARD ........................................................................................................ 2

ARGUMENT ...................................................................................................................... 2

    I.    Plaintiff's claims are not preempted ................................................................... 2

        A.    Lilly could have warned about the risk of gastroparesis from the start ....................... 4

        B.    Lilly does not present "clear evidence" that it "fully informed" the FDA of the risk of gastroparesis and that the FDA, in turn, rejected a proposed warning. .................................. 8

        C.    Lilly improperly shifts the burden to Plaintiff. ........................................................... 11

        D.    Lilly's preemption defense is premature. .................................................................... 12

        E.    Lilly had newly-acquired information ........................................................................... 13

    II.    Plaintiff alleges that the inadequate warning caused her injury. .................................... 16

        A.    Lilly's learned intermediary argument is premature ................................................... 16

        B.    Plaintiff alleges that a warning would have altered her doctor's decision. ................ 18

    III.    Plaintiff has stated a claim for express warranty. ........................................................... 19

    IV.    The First Amended Complaint is not a shotgun pleading. ............................................. 21

    V.    This Court should reserve judgment on punitive damages. ........................................... 22

CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

## Cases

*Aaron v. Wyeth*, 2010 WL 653984 (W.D. Pa. Feb. 19, 2010)........................................ 12

*Adams v. Walker*, 2021 WL 1894865 (E.D. La. May 11, 2021)..................................... 28

*Alexander v. Dresser*, 2022 WL 509366 (W.D. La. Feb. 18, 2022)............................... 27

*Anderson v. Merck*, 2022 WL 17096157 (N.D. Cal. Nov. 21, 2022) ............................. 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 2

*Austin v. Boehringer*, 2023 WL 3437821 (N.D. Cal. May 12, 2023) ........................... 15

*Barrett v. Dresser*, 2021 WL 53658 (W.D. La. Jan. 6, 2021)....................................... 28

*Barry v. Novartis*, 2022 WL 2373452 (E.D. Va. June 30, 2022) ................................. 19

*Batiste v. Stryker*, 2021 WL 1171880 (M.D. La. Mar. 26, 2021)........................... 24, 25

*Baudin v. Astrazeneca*, 413 F. Supp. 3d 498 (M.D. La. 2019).............................. 24, 26

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007).................................................................... 2

*Bertrand v. Eli Lilly*, 2013 WL 4093556 (W.D. La. Aug. 13, 2013)............................ 25

*Blackburn v. Shire*, 2022 WL 16729466 (11th Cir. Nov. 7, 2022) .............................. 12

*Boutte v. Stryker*, 67 F. Supp. 3d 732 (M.D. La. 2014)................................................ 26

*Breshears v. Fla. Power*, 1999 WL 397396 (E.D. La. June 15, 1999)......................... 23

*Brocato v. DePuy*, 2015 WL 854150 (E.D. La. Feb. 25, 2015) ............................. 21, 25

*Brooks v. Amgen*, 2019 WL 507491 (M.D. La. Feb. 8, 2019) ..................................... 24

*Burton v. Abbvie*, 2023 WL 6396667 (C.D. Cal. Sept. 25, 2023) ......................... 15, 18

*Cain v. Altec*, 236 F. App'x 965 (5th Cir. 2007) ........................................................ 30

*Cain v. New Orleans*, 2016 WL 2849478 (E.D. La. May 13, 2016)............................. 28

*Celino v. Biotronik*, 536 F. Supp. 3d 89 (E.D. La. 2021) ............................................ 24

*Crockett v. Luitpold*, 2020 WL 433367 (E.D.Pa. Jan. 28, 2020)............................ 11, 12

*Davison v. Novartis*, 2021 WL 4340412 (M.D. Fla. Sept. 23, 2021).......................... 16

*Dennis v. Bayer*, 2020 WL 534307 (W.D.N.C. Feb. 3, 2020)..................................... 16

*Doe v. AstraZeneca*, 2015 WL 4661814 (E.D. La. Aug. 5, 2015) .............................. 27

*Donald v. AstraZeneca*, 2017 WL 1079186 (E.D. La. Mar. 22, 2017) ....................... 24

*Dorsett v. Sandoz*, 699 F. Supp. 2d 1142 (C.D. Cal. 2010)......................................... 13

*Dubroc v. Bristol-Myers*, 2019 WL 3756469 (M.D. La. Aug. 8, 2019)....................... 26

*Duhon v. Union Pac.*, 43 F.3d 1011, 1018 (5th Cir. 1995) ......................................... 30

*Eike v. Allergan*, 2014 WL 1040728 (S.D. Ill. Mar. 18, 2014) .................................. 16

*Energy Coal v. CITGO*, 836 F.3d 457 (5th Cir. 2016) ................................................ 28

*Evans v. Gilead Scis.*, 2020 WL 5189995 (D. Haw. Aug. 31, 2020) .......................... 16

*Fisher v. Halliburton*, 667 F.3d 602 (5th Cir. 2012) .................................................. 17

*Flagg v. Stryker*, 647 Fed. Appx. 314 (5th Cir. 2016)................................................. 24

*Forst v. Smithkline*, 639 F. Supp. 2d 948 (E.D. Wis. 2009) ....................................... 14

*Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011)........................................... 17

*Frye v. Novartis*, 2022 WL 4305656 (E.D. Ark. Sept. 19, 2022)............................. 2, 15, 18, 19

*Fuller v. Eisai*, 513 F. Supp. 3d 710 (E.D. La. 2021) ................................................. 26

*Gaetano v. Gilead Scis.*, 529 F. Supp. 3d 333 (D.N.J. 2021)...................................... 15

*Garig v. Travis*, 2021 WL 2708910 (M.D. La. June 30, 2021).................................... 28

*Gremo v. Bayer*, 469 F. Supp. 3d 240 (D.N.J. 2020) .................................................. 15

*Guidry v. Janssen*, 206 F. Supp. 3d 1187 (E.D.La. 2016)..................................... 20, 25

*Harris v. Merck*, 2012 WL 5384720 (W.D. La. Nov. 1, 2012) ........................ 21, 24, 25

*Harris v. Novartis*, 2021 WL 5506808 (D. Neb. Nov. 24, 2021) ............................................ 16, 26

*Hayes v. SmithKline*, 2009 WL 4912178 (N.D. Okla. Dec. 14, 2009) ........................................ 12

*Hinson v. Techtronic,* 126 F. Supp. 3d 747 (W.D. La. 2015), *aff'd*, 644 Fed. Appx. 371 (5th Cir. 2016) ......................................................................................................................... 21

*Holbrook v. Boston Sci.*, 487 F. Supp. 3d 100 (D. Mass. 2020) .................................................. 23

*Huffman v. Squibb*, 2016 WL 6024532 (E.D. La. Oct. 14, 2016) ............................................... 26

*Hutto v. McNeil-PPC*, 79 So. 3d 1199 (La. 3rd App. 2011) ...................................................... 12

*In re Actos*, 2014 WL 60298 (W.D. La. Jan. 7, 2014) .......................................................... 3, 4, 11

*In re Avandia*, 945 F.3d 749 (3d Cir. 2019) ............................................................................... 14

*In re Phenylpropanolamine (PPA)*, 2004 WL 7332793 (W.D. Wash. June 10, 2004) ................. 29

*In re Prempro*, 586 F.3d 547 (8th Cir. 2009) ............................................................................ 11

*In re Tasigna*, 2022 WL 35930 (M.D. Fla. Jan. 4, 2022) .......................................................... 14

*In re Taxotere*, 508 F. Supp. 3d 71 (E.D. La. 2020) ......................................................... passim

*In re Taxotere*, 508 F. Supp. 3d 71 (E.D. La. 2020) ................................................................. 12

*In re Testosterone Replacement Therapy*, 2017 WL 1836435 (N.D. Ill. May 8, 2017) ............... 11

*In re Testosterone Replacement Therapy*, 430 F. Supp. 3d 516 (N.D. Ill. 2019) ......................... 9

*In re Xarelto*, 2017 WL 3188456 (E.D. La. July 21, 2017) ........................................... 12, 18, 22

*In re Zofran (Zofran II)*, 57 F.4th 327 (1st Cir. 2023) .............................................................. 14

*In re: Zofran (Zofran I)*, 2016 WL 287056 (D. Mass. Jan. 22, 2016) ......................................... 14

*Ivory v. Pfizer Inc.,* 2009 WL 3230611 (W.D. La. Sept. 30, 2009) ..................................... 21, 25

*Jackson v. Johnson & Johnson*, 2012 WL 2428262 (W.D. La. June 25, 2012) .......................... 22

*Jenkins v. Bristol-Myers*, 2015 WL 5012130 (E.D. La. Aug. 21, 2015) ..................................... 20

*Jones v. Bock*, 549 U.S. 199, 216 (2007) ................................................................................. 16

*Kampmann v. Mason*, 921 So. 2d 1093 (La. App. 5th 2006) ..................................................... 21

*Kaylor v. Eisai*, 2022 WL 983657 (W.D. La. Mar. 20, 2022) .................................................... 25

*Kent v. Pfizer*, 2017 WL 11672334 (S.D. Cal. 2017) ............................................................... 16

*Koho v. Forest Labs.*, 17 F. Supp. 3d 1109 (W.D. Wash. 2014) ............................................... 13

*La. Fair Hous. Action Ctr. v. Plantation Mgmt.*, 2022 WL 204555 (E.D. La. Jan. 24, 2022) ...... 27

*Lahaye v. AstraZeneca*, 2015 WL 1935947 (M.D. La. Apr. 28, 2015) ...................................... 24

*Lauderdale v. Organon*, 2022 WL 3702113 (W.D. Ark. Aug. 26, 2022) .................................... 15

*Lawson v. Lifepoint*, 2017 WL 4365814 (W.D. La. Sept. 29, 2017) .......................................... 27

*Lewis v. Baxter*, 2017 WL 661324 (E.D. La. Feb. 17, 2017) ..................................................... 27

*Lussan v. Merck*, 2017 WL 2377504 (E.D. La. June 1, 2017) ................................................... 26

*Mason v. SmithKline*, 596 F.3d 387 (7th Cir. 2010) ........................................................... 12, 13

*McLaughlin v. GlaxoSmithKline*, 2014 WL 669349 (W.D. La. Jan. 6, 2014) ............................. 21

*McWilliams v. Novartis*, 2018 WL 3369655 (S.D. Fla. July 9, 2018) ......................................... 13

*Merck v. Albrecht*, 139 S. Ct. 1668 (2019) ........................................................................ passim

*Mitchell v. Boehringer Ingelheim*, 2017 WL 5617473 (W.D. Tenn. Nov. 21, 2017) ................... 18

*Nelson v. Mylan*, 2010 WL 3339274 (W.D. La. Aug. 3, 2010) .................................................. 25

*New Orleans Assets v. Carl E. Woodward*, 278 F. Supp. 2d 776 (E.D. La. 2003) ...................... 29

*Newman v. McNeil Consumer Healthcare*, 2012 WL 39793 (N.D. Ill. Jan. 9, 2012) ............ 18, 19

*Noble Cap. Tex. Real Est. Income Fund v. Newman*, 2023 WL 3035411 (W.D. Tex. Jan. 13, 2023) ................................................................................................................................. 28

*Nobre v. La. Dep't of Pub. Safety*, 935 F.3d 437 (5th Cir. 2019) .............................................. 17

*Pa. St. Police v. Suders*, 542 U.S. 129 (2004) ........................................................................ 16

*Parker v. La. Dep't of Pub. Safety & Corr.*, 2021 WL 2697528 (M.D. La. June 30, 2021) .......... 28

iv

*Pellegrin v. C.R. Bard*, 2018 WL 3046570 (E.D. La. June 20, 2018) .................................... 24, 27

*Perry v. Merit Sys.*, 582 U.S. 420 (2017) ................................................................................... 16

*Racko Prop. v. Alaba. Great S.*, 2008 WL 754684 (E.D. La. Mar. 19, 2008) .............................. 30

*Rayford v. Karl Storz Endoscopy*, 2016 WL 4398513 (W.D. La. June 22, 2016) .................... 20-21

*Rhodes v. Covidien*, 2019 WL 2162845 (E.D. La. May 17, 2019) ............................................. 24

*Robinson v. Eli Lilly*, 2018 WL 4039703 (E.D. Ky. Aug. 23, 2018) ......................................... 16

*Schedin v. Ortho-McNeil-Janssen*, 776 F. Supp. 2d 907 (D. Minn. 2011) ................................. 18

*Sharkey v. Sterling Drug,* 600 So. 2d 701 (La. App. 1st Cir. 1992) ............................................ 22

S*hipley v. Forest Laboratories*, 2015 WL 4199739 (D. Utah July 13, 2015) ............................. 19

*Small v. Amgen,* 2 F. Supp. 3d 1292 (M.D. Fla. 2014) ............................................................... 23

*Stahl v. Novartis*, 283 F.3d 254 (5th Cir. 2002) ............................................................... 1, 20, 21

*Stube v. Pfizer*, 446 F. Supp. 3d 424 (W.D. Ark. 2020) .............................................................. 4

*Thom v. Bristol-Myers Squibb*, 353 F.3d 848 (10th Cir. 2003) .................................................. 23

*Thomas v. Bracco*, 2020 WL 1016273 (W.D. La. Feb. 27, 2020) ............................................... 20

*Timm v. Upjohn*, 624 F.2d 536 (5th Cir. 1980) ........................................................................... 21

*Vance v. Terrazas*, 444 U.S. 252 (1980) .................................................................................... 17

*Vesoulis v. ReShape Lifesciences,* 2021 WL 1909725 (E.D. La. May 12, 2021), aff'd, 2022 WL
989465 (5th Cir. Apr. 1, 2022) ............................................................................................. 22

*Whaley v. Merck*, 2022 WL 1153151, at *11 (S.D. Cal. Apr. 12, 2022) ............................... 15, 18

*Wyeth v. Levine*, 555 U.S. 555 (2009) ............................................................................... passim

**Statutes**

La. Stat. §9:2800.57 ................................................................................................................... 17

**Other Authorities**

FDA, *Supplemental Applications Proposing Labeling Changes for Approved Drugs, Biologics,
and Medical Devices*, 73 FR 49603-01 (Aug. 22, 2008) ........................................................ 15

**Rules**

21 C.F.R. § 201.57(c)(6)(iii) ......................................................................................................... 9

21 C.F.R. § 201.57(c)(7) ............................................................................................................... 7

21 C.F.R. § 201.57(b)(a)(10) ......................................................................................................... 6

## INTRODUCTION

This Court should deny Eli Lilly's motion to dismiss. Plaintiff has alleged that Lilly knew of the risk that Mounjaro could cause gastroparesis (stomach paralysis) and yet opted not to warn that 1) Mounjaro could cause gastroparesis, 2) patients may not know that they have gastroparesis, or 3) symptoms like vomiting and nausea may indicate that a patient has gastroparesis. As a result, Plaintiff's doctor did not know of the risk and prescribed Mounjaro to Plaintiff, causing Plaintiff's gastroparesis and its sequelae such as severe vomiting to the point where she lost teeth and was hospitalized and vomiting undigested food hours and days after eating it.

Lilly argues that the FDA would not let it comply with the Louisiana law's adequate-warning requirement. Lilly's preemption argument is misplaced as 1) Lilly does not argue that it has ever fully informed the FDA of the gastroparesis risk, and 2) the FDA has never told Lilly that it cannot warn about gastroparesis. Lilly also argues that *Plaintiff* has the burden to plead around its preemption defense. Lilly's argument goes against *Wyeth v. Levine*, 555 U.S. 555, 569 (2009), which squarely places the burden on Lilly's shoulders to prove preemption by "clear evidence." As a result, Lilly's argument is legally premature and factually wrong.

This Court should also reject Lilly's learned intermediary defense. The Fifth Circuit has held that a manufacturer can obtain judgment under this doctrine only where the prescriber has unequivocally *testified* that a different warning would have made no difference. *Stahl v. Novartis*, 283 F.3d 254, 267 (5th Cir. 2002). Lilly's argument is premature, and in any event, Plaintiff has pled that the inadequate warning caused her doctor's prescription decision.

## FIRST AMENDED COMPLAINT ALLEGATIONS

Mounjaro (tirzepatide) is a glucagon-like peptide-1 receptor agonist (GLP-1RA). Eli Lilly (Lilly) manufactures Mounjaro to treat type 2 diabetes. FAC ¶¶ 31, 38. On or around May 31,

2023,[1] Plaintiff began using Mounjaro that had been prescribed by her physician. FAC ¶¶ 11-12. As a result of using Mounjaro, Plaintiff suffered from gastroparesis and its sequelae. FAC ¶ 13. Gastroparesis ("paralyzed stomach") is a condition in which the stomach muscles fail to move food into the digestive tract, leaving undigested food in the stomach. FAC ¶¶ 7-8. Due to her gastroparesis, Plaintiff suffered from severe vomiting to the point where she lost teeth and was hospitalized, vomiting undigested food hours and days after eating it, and stomach pain. FAC ¶ 14.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). Plaintiff must state a plausible claim by alleging "factual content that allows the court to draw the reasonable inference that the defendant is liable..." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff need not make "detailed factual allegations," *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007), and the Court must "draw all reasonable inferences in favor of the plaintiff." *Frye v. Anadarko*, 953 F.3d 285, 290–91 (5th Cir. 2019). Rule 8 "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support liability. *Twombly,* 550 U.S. at 556.

## ARGUMENT

### I.      Plaintiff's claims are not preempted.

Contrary to Lilly's argument, federal law does not prohibit Louisiana from requiring a gastroparesis warning on the Mounjaro label. Lilly argues that the FDA would not let it comply with the Louisiana law's adequate-warning requirement, and that Plaintiff has the burden to prove

---

[1] The FAC says that Plaintiff began taking Mounjaro on or about July 2023. After reviewing Plaintiff's prescription records, Plaintiff's counsel has learned that her first Mounjaro prescription was ordered or filled about 30 days earlier on May 31, 2023. For the purposes of this motion, the discrepancy is immaterial because Plaintiff does not contend that Lilly should have changed the label based upon any medical literature after May 31, 2023.

that the FDA would have allowed a warning. To the contrary, the Supreme Court has stated in no uncertain terms that "the manufacturer bears responsibility for the content of its label at all times. It is charged both with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market." *Levine*, 555 U.S. at 570-71. Because Lilly has the duty to "craft[] an adequate label" and to "ensur[e] that its warnings remain adequate," preemption "is a demanding defense," *id.* at 573, which requires the *manufacturer* to prove that "it is impossible … to comply with both state and federal requirements." *Merck v. Albrecht*, 139 S. Ct. 1668, 1672 (2019). To prove that the FDA would have rejected a warning, Lilly must present "clear evidence" that 1) "it fully informed the FDA of the justifications for the warning," and 2) "the FDA, in turn, informed the drug manufacturer that the FDA would not approve … that warning." *Id.* at 1678. Here, Lilly has not even attempted to satisfy either prerequisite to preemption.

Moreover, given the heavy evidentiary burden, preemption is typically resolved after discovery. Accordingly, in *In re Actos*, 2014 WL 60298 (W.D. La. Jan. 7, 2014), Judge Doherty resolved the preemption defense at the summary judgment stage based upon a full evidentiary record. Judge Doherty rejected Takeda's preemption defense because it did not present "clear evidence" to prove the defense. *Id.* at *7 ("Given the lack of such evidence, the Court concludes defendants fail to establish federal preemption in this case."). As Lilly raises preemption at the motion to dismiss stage, Lilly's preemption argument is premature because Lilly has not presented evidence of anything. Lilly's argument is also factually misplaced because 1) Lilly does not argue that it has ever fully informed the FDA of the gastroparesis risk, and 2) the FDA has never told Lilly that it cannot warn about gastroparesis. As a result, Lilly's argument is legally premature and factually wrong. *See Albrecht*, 139 S. Ct. at 1678 (noting that "meeting the standard we set forth would be difficult…"). At this early stage, Lilly cannot meet its evidentiary burden to prove that

the FDA prevented Louisiana from requiring a warning about the risk of gastroparesis, vomiting and nausea may be symptoms of gastroparesis, that patients with gastroparesis may be initially asymptomatic or present with non-specific symptoms, that gastroparesis can lead to hospitalization, or that doctors may need to test or monitor for gastroparesis.

### A.  Lilly could have warned about the risk of gastroparesis from the start.

Significantly here, Judge Doherty in *Actos* held that Takeda could have added a warning in the initial label. 2014 WL 60298, at *7 ("[D]efendants [] possessed the ability to implement stronger warning language into labeling, by submitting stronger warning language for FDA approval…"); *Anderson v. Merck*, 2022 WL 17096157, at *6 (N.D. Cal. Nov. 21, 2022); *Stube v. Pfizer*, 446 F. Supp. 3d 424, 437 (W.D. Ark. 2020). Here, Lilly could have warned about gastroparesis in its initial label in May 2022. No later than May 2022, and probably much earlier, Lilly knew or should have known—from clinical trials, medical literature, and case reports—that: 1) GLP-1RAs (like Mounjaro) **can cause gastroparesis**; 2) symptoms can include nausea, vomiting, feeling full, bloating, and abdominal pain; and 3) gastroparesis may be difficult to diagnose because patients may not know they have the disorder. FAC ¶¶ 5-8, 62-64, 67-68, 71-73, 81. Given this information, Lilly could have submitted a gastroparesis warning during the initial approval process. Accordingly, Plaintiff's claim is not preempted.

### 1.  <u>Lilly could have warned about gastroparesis.</u>

Mounjaro's label mentions gastroparesis but not in the context of potential risk associated with prescribing Mounjaro, and it certainly does not *warn* about gastroparesis. The label states that "MOUNJARO has not been studied in patients with severe gastrointestinal disease, including severe gastroparesis, and is therefore not recommended in these patients."[2] At best, it merely

---

[2] Mounjaro May 2022 label p. 4 (accessed 11/16/23)
([https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/215866s000lbl.pdf](https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/215866s000lbl.pdf)).

implies that if you already suffer from gastroparesis, that condition might somehow be affected by the use of the drug. Lilly also relies upon the Warning about undefined "severe" GI adverse reactions, and that Mounjaro "[h]as not been studied in patients with severe gastrointestinal disease and is not recommended in these patients."[3] This language does not warn that gastroparesis, a paralysis of the stomach and thus a paralysis of digestion, is one of the possible reactions. In sum, if Lilly knew of a potential gastroparesis risk, Lilly seemed to take pains *not* to warn of that risk.

Lilly further argues that the label indicates that Mounjaro "delays gastric emptying," which "diminishes over time."[4] However, the label does not mention delayed gastric emptying in the Warnings section, indicating that Lilly was simply describing the drug's mechanism and not warning of impaired gastric emptying. *See* 21 C.F.R. §§ 201.57(b)(a)(10) and 201.57(c)(6) (requirements for "Warnings and Precautions"). This language does not warn doctors that GLP-1RAs can cause gastroparesis. Moreover, the not-been-studied and diminishes-over-time qualifiers are misleading because medical literature, case reports, and clinical studies show the gastroparesis risk. FAC ¶¶ 62-64, 67-68, 71-73, 81.[5]

Lilly also argues that it identifies GI adverse reactions like nausea and vomiting,[6] but listing a condition in the Adverse Reaction section is simply not a Warning. It is simply a report that nausea and vomiting have occurred and there is a "some basis to believe" that it is caused by the drug. 21 C.F.R. § 201.57(c)(7). The Adverse Reaction section thus unquestionably is not a discharge of a duty to warn. *Albrecht*, 139 S. Ct. at 1673. Additional water is thrown on the issue

---

[3] Mounjaro May 2022 label p. 1, 4.
[4] Mounjaro May 2022 label p. 10.
[5] Lilly selectively quotes FAC ¶ 80 to argue gastroparesis is synonymous with "delayed gastric emptying," but that paragraph also states that "[g]astroparesis is a *disorder* that slows or stops the movement of food from the stomach to the small intestine, even though there is no blockage in the stomach or intestines." FAC ¶ 80 (emphasis added).
[6] Mounjaro May 2022 label p. 6.

by Lilly stating that the "majority of reports… decreased over time."[7] This statement is intended to lead doctors and patients to believe that the nausea and vomiting are transient conditions versus symptoms of a shut-down of biologically-required gastric motility – the body's ability to move food through the digestive process.

Lilly further cites the Mounjaro Medication Guide that advises patients to tell their doctor if they have "severe problems with your stomach, such as slowed emptying of your stomach (gastroparesis) or problems with digesting food."[8] First, a company cannot discharge its duty to warn of risks by telling patients to self-diagnose medical problems like "slowed emptying of your stomach". Certainly, such a statement in a patient brochure is not an adequate warning of a life-threatening condition as a matter of law. Even if a guide for patients to purportedly self-diagnose could serve as a Warning, Lilly's guide does not explain how a patient is to self-diagnoses this condition; it does not even mention—much less explain—symptoms of gastroparesis. FAC ¶¶ 72-73, 81. Finally, but critically, Lilly's reliance on the direct-to-consumer guide is unavailing because ***there are no allegations that Lilly provided the guide to Plaintiff***. In short, this Court should deny Lilly's motion because it has not shown that it could not warn prescribing physicians about the risk of gastroparesis in its label.

### 2.  **Lilly has not proven that the FDA would have prohibited a stronger warning.**

Lilly asserts that the FDA knew in May 2022 that GLP-1RAs (like Mounjaro) can cause severe GI adverse events (AEs), including delayed gastric emptying. Lilly does not, however, argue that the FDA would have rejected a gastroparesis warning, so Lilly's FDA-knowledge argument is legally irrelevant. Lilly's argument is also factually misplaced. Lilly erroneously states

---

[7] Mounjaro May 2022 label p. 6.
[8] Mounjaro May 2022 label p. 20.

that "Plaintiff alleges that all of this information was previously submitted to the FDA," MTD Br. p. 12, but Plaintiff never alleges that the FDA knew about the risk that GLP-1RAs can cause gastroparesis. Lilly cites FDA records to argue that the FDA knew that Mounjaro could delay gastric emptying and could cause severe GI AEs. Although courts can take judicial notice of some public records, the FDA records are heavily redacted and only show the tip of the iceberg as to the approval process. The records do not reveal what, if anything, Lilly told the agency about gastroparesis and what, if anything, the FDA considered about gastroparesis. The court can "judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b)(2). The fact at issue (whether Lilly fully informed the FDA of the gastroparesis risk as shown by clinical trials, medical literature, case reports, and AEs) is subject to reasonable dispute. This Court should not take judicial notice of what the FDA considered *because the cited records do not answer the question*.

Even if the Court considers the FDA online records, neither FDA review even mentions the possibility that GLP-1RAs can cause gastroparesis—much less that Lilly informed the FDA of the risk.[9] Nor do these FDA documents refer to any disorder, paralysis, or abnormality relating to gastric emptying; rather, these documents discuss "gastric emptying" only in terms of Mounjaro's mechanism. The only mention of gastroparesis is a single sentence fragment that: "No data on subjects with severe gastrointestinal disease, including severe gastroparesis."[10] These documents

---

[9] FDA, CDER, Clinical Review(s), NDA No. 215866-0001 (accessed 11/12/23) (https://www.accessdata.fda.gov/drugsatfda_docs/nda/2022/215866Orig1s000MedR.pdf); FDA, CDER, Summary Review, NDA No. 215866-0001 (accessed 11/12/23) (https://www.accessdata.fda.gov/drugsatfda_docs/nda/2022/215866Orig1s000SumR.pdf).
[10] FDA, CDER, Summary Review, NDA No. 215866-0001 p. 8 (accessed 11/12/23) (https://www.accessdata.fda.gov/drugsatfda_docs/nda/2022/215866Orig1s000SumR.pdf).

indicate—if anything—that Lilly *did not* fully inform the FDA of the risk of gastroparesis.

Lilly next points to a 2021 FDA review of Wegovy. The Wegovy reviewer was not involved in Mounjaro reviews, and this Court should not assume at this stage that the Mounjaro reviewers considered the gastroparesis risk simply because a reviewer for another drug did. Further, the Wegovy reviewer's analysis was limited to clinical trials and did not analyze case reports, medical literature, or AEs outside of clinical trials. Given the limited scope of this review by a single person within the FDA, it does not establish that the FDA would have rejected a gastroparesis warning for Mounjaro. In fact, the Wegovy review *refutes* Lilly's preemption defense as the reviewer noted that "[s]emaglutide may be associated with gastroparesis, particularly in vulnerable patients."[11] This language shows, if anything, that the FDA would have been *amenable* to a label change. *See In re Testosterone Replacement Therapy*, 430 F. Supp. 3d 516, 531 (N.D. Ill. 2019) ("Evidence that the FDA recognized a possible link indicates a reasonable possibility that if a TRT manufacturer had tried to add a cardiovascular risk warning, the FDA would have agreed..."). This supports an inference that the FDA would have permitted a gastroparesis warning.

### B. Lilly does not present "clear evidence" that it "fully informed" the FDA of the risk of gastroparesis and that the FDA, in turn, rejected a proposed warning.

Lilly also has not proven that the FDA would have prohibited a label change after May 2022. Under the Changes Being Effected (CBE) regulation, manufacturers can "change a label without prior FDA approval… where there is 'newly acquired information' about the 'evidence of a causal association' between the drug and a risk of harm." *Albrecht*, 139 S. Ct. at 1673 (citing 21 C.F.R. § 314.70(c)(6)(iii)(A)). Again, to prove that this was impossible, Lilly must present "clear evidence" that 1) "it fully informed the FDA of the justifications for the warning," and 2) "the

---

[11] FDA, CDER, Clinical Review(s), NDA No. 215256-1000 p. 336 (accessed 11/12/23) (https://www.accessdata.fda.gov/drugsatfda_docs/nda/2021/215256Orig1s000MedR.pdf).

FDA, in turn, informed the drug manufacturer that the FDA would not approve … that warning." *Id.* at 1678. Lilly does not even attempt to satisfy either prerequisite to the preemption defense.

The first question is whether Lilly "submitted *all* material information to the FDA." *Id.* at 1680 (emphasis added). Lilly has not demonstrated that it fully informed the FDA before approval of the risk of gastroparesis—including published case reports, clinical trial data, expert opinion, medical literature, and AEs, or that, after approval, "it fully informed the FDA *of the justifications for the warning*," *id.* at 1678 (emphasis added). *See id.* at 1680 ("For example, if the FDA rejected a drug manufacturer's supplemental application to change a drug label on the ground that the information supporting the application was insufficient to warrant a labeling change, the meaning and scope of that decision might depend on what information the FDA had before it.").

Lilly further has not demonstrated that the FDA "prohibited the drug manufacturer from adding any and all warnings to the drug label that would satisfy state law." *Id.* at 1678.[12] This case is like *Actos* where Judge Doherty rejected a preemption defense because Takeda "offer[ed] no evidence that a stronger warning was proposed by Takeda and rejected by the FDA." 2014 WL 60298, at *7. The FDA approval is not "clear evidence" that it would have rejected a gastroparesis warning. *Id.* (FDA "approvals of language do not offer conclusive proof of preemption."). For example, in *Levine*, Wyeth submitted a proposed change in 1981, but the FDA suggested different language in 1987 after reviewing numerous articles and case reports about the risk of gangrene. 555 U.S. at 561.[13] The FDA then instructed Wyeth in 1996 to "[r]etain verbiage in current label," and in 1998, the FDA approved the 1981 proposed label and told Wyeth that the label "must be

---

[12] *See also Levine,* 555 U.S. at 572 (Wyeth "does not argue that it attempted to give the kind of warning required by the Vermont jury but was prohibited from doing so..."); *Crockett v. Luitpold*, 2020 WL 433367, at *7 (E.D.Pa. Jan. 28, 2020) ("Defendants do not argue … that they proposed a stronger warning to the FDA or that the FDA would have rejected a different warning label.").
[13] *Id.* at 614-617 & notes 5-11 (Alito, J., dissenting) (FDA considered literature and case reports).

identical" to the approved insert. *Id.* at 562. The Court held that "the mere fact that the FDA approved Phenergan's label does not establish that it would have prohibited such a change." *Id.* at 573 & n.6.[14] Under *Levine*, "clear evidence requires more than a prior refusal to add similar language." *In re Xarelto*, 2017 WL 3188456, at *5 (E.D. La. July 21, 2017). *See Mason*, 596 F.3d at 393 (noting that, in *Levine*, "the FDA strongly considered a similar warning to the one the plaintiff proposed"). Thus, FDA inaction is not "clear evidence" of preemption.[15]

This Court should not speculate as to what the FDA might have done because "the possibility of impossibility is not enough." *Albrecht*, 139 S. Ct. at 1678 (citation omitted). *See also id*. at 1679 (citation omitted). As one court explained, "it is not sufficient for the [manufacturer] to contend that if it had submitted a new label—with additional warnings—to the FDA, the FDA *would have* rejected the warning." *Crockett*, 2020 WL 433367, at *7) (emphasis by court) (citations omitted). Preemption is limited to "situations where the FDA has *actually* rejected a proposed labeling change…" *Id.*[16] Here, the FDA never rejected a gastroparesis warning; in fact, Lilly never

---

[14] *See also In re Prempro*, 586 F.3d 547, 558, 563 (8th Cir. 2009) (FDA approvals of qualified language were not clear evidence that FDA would have rejected stronger warning); *In re Testosterone Replacement Therapy*, 2017 WL 1836435, at *8 (N.D. Ill. May 8, 2017) (rejecting argument that "FDA repeatedly approved labels that did not contain the warning").

[15] *See also Hayes v. SmithKline*, 2009 WL 4912178, at *4 (N.D. Okla. Dec. 14, 2009) ("…GSK has provided no evidence that it attempted to strengthen the label's warnings…"); *Aaron v. Wyeth*, 2010 WL 653984, at *6 (W.D. Pa. Feb. 19, 2010) (FDA's use of alternate label—as opposed to a warning suggested by Wyeth—did clearly show that FDA would have rejected stronger warning because "Wyeth did not press its position"); *Hutto v. McNeil-PPC*, 79 So. 3d 1199, 1210 (La. 3rd App. 2011) ("McNeil … did not attempt to have all the warnings … included on its … label.").

[16] *See also Blackburn v. Shire*, 2022 WL 16729466, at *2 (11th Cir. Nov. 7, 2022) ("…Shire does not contend that it ever attempted to strengthen the monitoring instruction."); *In re Taxotere*, 508 F. Supp. 3d 71, 83, 85 (E.D. La. 2020) ("…[T]he FDA did delete a subsection that Sanofi proposed … The FDA, however, provided no reason for the deletion. Without more, this Court cannot divine the FDA's reason for removing this entire subsection, and the Court will not interpret the deletion as a pronouncement..."); *Dorsett v. Sandoz*, 699 F. Supp. 2d 1142, 1159 (C.D. Cal. 2010) ("Defendants offer nothing but theoretical assumptions of what the FDA would have done..."); *Koho v. Forest Labs.*, 17 F. Supp. 3d 1109, 1119 (W.D. Wash. 2014)

even proposed one.

Indeed, the fact that the FDA *permits* a severe GI warning supports an inference that the FDA would not *prohibit* a gastroparesis warning. *See Mason v. SmithKline*, 596 F.3d 387, 395 (7th Cir. 2010) ("[I]t seems unlikely that the FDA would have refused to allow GSK to warn about a possible risk of suicide for young adults when it had already warned the public that Paxil was potentially unsafe for 17–year–olds..."); *McWilliams v. Novartis*, 2018 WL 3369655, at *4 (S.D. Fla. July 9, 2018) (rejecting argument that FDA would have rejected stroke warning because FDA approved warning about "risk of vascular occlusive events generally, not stroke specifically").

### C. Lilly improperly shifts the burden to Plaintiff.

Lilly claims that Plaintiff bears the burden to demonstrate the existence of newly-acquired information, but the Supreme Court rejected this argument. In *Levine,* Wyeth argued that it "may only change its label to reflect newly acquired information," "it could have changed Phenergan's label only in response to new information that the FDA had not considered," and "Levine has not pointed to any such information..." 555 U.S. at 568. The Court rejected Wyeth's attempt to shift the burden to Levine: "Wyeth's argument misapprehends both the federal drug regulatory scheme *and its burden in establishing a pre-emption defense*." *Id.* at 569 (emphasis added); *see also Albrecht,* 139 S. Ct. at 1679 (considering newly-acquired information requirement and then reiterating Merck's burden); *In re Avandia*, 945 F.3d 749, 760 (3d Cir. 2019) (rejecting argument that GSK "did not have [] newly acquired information" and placing burden on GSK).[17]

Lilly argues that *In re Zofran (Zofran II)*, 57 F.4th 327 (1st Cir. 2023), supports a burden-

---

("[D]efendants' speculation regarding how the FDA would have viewed such a warning does not constitute clear evidence that the FDA would have rejected the particular warning...").

[17] *See e.g., Wolfe v. McNeil-PPC*, 773 F. Supp. 2d 561, 568 (E.D. Pa. 2011) (placing burden on defendant). *Forst v. Smithkline*, 639 F. Supp. 2d 948, 954 (E.D. Wis. 2009) (same); *Crockett*, 2020 WL 433367, at *8 (same); *Dorsett*, 699 F. Supp. 2d at 1155 (same).

shifting framework, but Lilly conveniently does not mention the *Zofran I* court's denial of GSK's motion to dismiss as "premature." *In re: Zofran (Zofran I)*, 2016 WL 287056, at \*4 (D. Mass. Jan. 22, 2016).[18] Moreover, the burden-shifting language in *Zofran II* is dicta because the court assumed that plaintiffs must demonstrate the existence of newly-acquired information as "[a]ll parties presume[d]" so. 57 F.4th at 336. Because the Supreme Court rejected an identical argument in *Levine*, the more persuasive authority rejects any burden-shifting arguments. *See Gaetano v. Gilead Scis.*, 529 F. Supp. 3d 333, 345-46 (D.N.J. 2021); *In re Tasigna*, 2022 WL 35930, at \*1 (M.D. Fla. Jan. 4, 2022); *Whaley v. Merck*, 2022 WL 1153151, at \*11 (S.D. Cal. Apr. 12, 2022).[19]

### D. Lilly's preemption defense is premature.

The issue of preemption "is not properly before the Court … at this time." *Gremo v. Bayer*, 469 F. Supp. 3d 240, 254 (D.N.J. 2020). Indeed, "impossibility pre-emption is 'a demanding defense' rather than a pleading requirement." *Id.* "Moreover, the impossibility pre-emption defense places the burden on Defendants—and not Plaintiff—to support that defense with 'clear evidence'…" *Id.* Thus, courts reject arguments that plaintiffs must plead around preemption.[20]

---

[18] The court found that the "clear evidence" requirement "surely contemplates some form of fact-based evaluation," and concluded that "plaintiffs are entitled to an opportunity to develop the record as to how the FDA would have responded to a proposal had GSK submitted one." *Id.* at \*3.

[19] *Zofran II* is also distinguishable because the plaintiffs' studies "concluded that there was no statistically significant relationship" with the risk, and the FDA rejected three requests to strengthen the warning—two by Novartis and one by GSK. 57 F.4th at 333-34, 338.

[20] *See e.g. Burton v. Abbvie*, 2023 WL 6396667, at \*5 (C.D. Cal. Sept. 25, 2023); *Austin v. Boehringer*, 2023 WL 3437821, at \*4 (N.D. Cal. May 12, 2023) ("BIPI's preemption argument raises factual issues that are better suited for resolution on a fully developed record."); *Frye v. Novartis*, 2022 WL 4305656, at \*8 (E.D. Ark. Sept. 19, 2022) (rejecting argument that "as a matter of law…. the information in the label accurately and unambiguously conveyed the scope and nature of the risk" because "Court would have to rule on this dispute without any testimony or evidence from qualified experts, something which the Court is unwilling, and ill-equipped, to do."); *Lauderdale v. Organon*, 2022 WL 3702113, at \*6 (W.D. Ark. Aug. 26, 2022) ("The Court will not… determine which party more persuasively identifies the appropriate conclusions to draw from a given study."); *id.* at \*12 ("The Court has no way to validate whether the adverse events referenced in the Complaint represent the same adverse events referenced in the FDA

The Fifth Circuit has held that "plaintiffs are not required to anticipate or plead around affirmative defenses." *Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023).[21] Because "preemption is an affirmative defense," dismissal is not warranted "[u]nless the complaint itself establishes the applicability of a federal-preemption defense…" *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012). Lilly's preemption argument is premature as the FAC does not prove preemption.

### E.   Lilly had newly-acquired information.

---

submissions."); *Gaetano*, 529 F. Supp. 3d at 349 ("It cannot be gleaned from the face of the Complaint that the 'studies'… all date from before Truvada's approval in 2004. That is a fact that must be developed in discovery."); *Harris v. Novartis*, 2021 WL 5506808, at *2 (D. Neb. Nov. 24, 2021) ("[I]t is yet to be seen whether the plaintiffs can marshal evidence to prove that their allegations regarding adverse event reports and the re-evaluation of the defendant's clinical data actually constitutes newly acquired information…"); *Davison v. Novartis*, 2021 WL 4340412, at *4 (M.D. Fla. Sept. 23, 2021) ("[T]he underlying facts that drive those issues are not developed.."); *Evans v. Gilead Scis.*, 2020 WL 5189995, at *10 (D. Haw. Aug. 31, 2020) ("Evans is not required to plead the existence of 'newly acquired information.'"); *Dennis v. Bayer*, 2020 WL 534307, at *8 (W.D.N.C. Feb. 3, 2020) ("Whether or not the FDA would have rejected the label requested is not something that can be decided on the pleadings."); *Crockett*, 2020 WL 433367, at *8 ("[P]reemption is an affirmative defense, and it is thus Defendants' burden, not Plaintiff's, to demonstrate that it applies."); *Robinson v. Eli Lilly*, 2018 WL 4039703, at *6 (E.D. Ky. Aug. 23, 2018) ("At this early stage …, the Court is faced with no 'clear evidence' that the FDA would have denied such a change to Prozac's labeling…"); *Kent v. Pfizer*, 2017 WL 11672334, at *3 (S.D. Cal.) ("…Plaintiff does not have an obligation to plead around preemption."); *Eike v. Allergan*, 2014 WL 1040728, at *5 (S.D. Ill. Mar. 18, 2014) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof. … [T]here remain questions of fact yet to be determined and [] the record needs to be further developed.").

[21] *See also e.g., Jones v. Bock*, 549 U.S. 199, 216 (2007) ("[F]ailure to exhaust is an affirmative defense …, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *Perry v. Merit Sys.*, 582 U.S. 420, 435 n.9 (2017) ("[A] release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading."); *Pa. St. Police v. Suders*, 542 U.S. 129, 152 (2004) ("The plaintiff might elect to allege facts relevant to mitigation in her pleading or to present those facts in her case in chief, but she would do so in anticipation of the employer's affirmative defense, not as a legal requirement."); *Vance v. Terrazas*, 444 U.S. 252, 270 n.11 (1980) (stating "well established" "rule" that complaints need not "contain[] allegations that seek to avoid or defeat a potential affirmative defense" and courts should not "shift the burden of proof on the anticipated defense to plaintiff"); *Nobre v. La. Dep't of Pub. Safety*, 935 F.3d 437, 442 (5th Cir. 2019) ("A plaintiff is not required to anticipate or overcome affirmative defenses, such as expiration of the statute of limitations, in the complaint."); *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) (en banc) ("Because the statute of limitations is an affirmative defense and not a pleading requirement, it … must be resolved through discovery and summary judgment or trial.").

Lilly argues that it lacked newly-acquired information to add a gastroparesis warning after approval, but Lilly could have analyzed medical literature, clinical trials, and case reports. Absent allegations that Lilly analyzed this data before approval, it could have done so after approval. To support a warning, Lilly only needed "reasonable evidence of a causal association with the drug, a standard that could be met by a wide range of evidence."[22] Lilly did not need to satisfy any "higher evidentiary standard, such as a finding that there is a 'preponderance' of evidence that a product actually causes a particular kind of adverse event."[23] Courts have recognized in similar cases that clinical trials, medical literature, and case studies clear this hurdle.[24]

Newly-acquired information includes "new analyses of previously submitted data" because "risk information accumulates over time and that the same data may take on a different meaning in light of subsequent developments…" *Levine*, 555 U.S. at 569. Information is newly acquired where a manufacturer "conducts a new analysis of data showing risks of a different type or of greater severity or frequency than did reports previously submitted to FDA…" *Id. See also Xarelto*, 2017 WL 3188456, at *5 ("[N]ewly-acquired information is not limited to brand new information…"); *Frye*, 2022 WL 4305656, at *8 ("'[N]ewly acquired information' is not limited only to new data but includes the analysis of data previously submitted.").

Furthermore, newly-acquired information includes "information was previously known to the manufacturer, but not submitted to FDA…" *Burton*, 2023 WL 6396667, at *6. *See Whaley*, 2022 WL 1153151, at *12 (refusing to assume "that information was necessarily provided to the

---

[22] FDA, *Supplemental Applications Proposing Labeling Changes for Approved Drugs, Biologics, and Medical Devices*, 73 FR 49603-01 (Aug. 22, 2008).

[23] *Id*.

[24] *See Taxotere*, 508 F. Supp. 3d at 84 (presentation); *In re Lipitor*, 185 F. Supp. 3d 761, 770 (D.S.C. 2016) (study); *Schedin v. Ortho-McNeil-Janssen*, 776 F. Supp. 2d 907, 912 (D. Minn. 2011) (studies); *Mitchell v. Boehringer Ingelheim*, 2017 WL 5617473, at *5 (W.D. Tenn. Nov. 21, 2017) (AEs); *Xarelto*, 2017 WL 1395312, at *4 (complaints); *Newman*, 2012 WL 39793, at *9 (AEs).

FDA prior to the most recent approval"). Lilly does not argue that it submitted to the FDA, or analyzed for the FDA, *any* evidence to the FDA that GLP-1RAs can cause gastroparesis, much less that it analyzed *all* data.

Lilly also could have re-analyzed the pre-approval data based upon AEs about impaired gastric emptying, vomiting, and nausea—which are all symptoms of gastroparesis. Plaintiff alleges that CNN and the Rolling Stone reported in June-July 2023 that GLP-1RAs were causing gastroparesis. FAC ¶¶ 75-76, 85. Given the medical literature, clinical studies, and case reports previously described that identify the risk of gastroparesis, FAC ¶¶ 62-64, 67-68, 71-73, 81, it is reasonable to infer that Lilly received AEs about gastroparesis before news reporters did. It is also reasonable to infer that Lilly continued to receive reports of vomiting, nausea, and severe GI events, which Lilly reports in its label and could be signs of gastroparesis.

Indeed, in *Levine*, the Court held that, due to a mere 19 incidents between 1967 and 2000, "Wyeth could have analyzed the accumulating data and added a stronger warning." 555 U.S. at 570.[25] Moreover, the *Blackburn* court held that post-approval studies and AEs were newly-acquired information even though pre-approval literature and AEs had pointed to the risk. 2022 WL 16729466, at *2. Similarly, Lilly could have analyzed the data for the FDA regarding impaired gastric emptying and other possible symptoms of gastroparesis like nausea and vomiting.[26]

---

[25] *See also Taxotere*, 508 F. Supp. 3d at 84-85 ("It is not enough for Sanofi to show that the adverse event reports had been submitted to the FDA. Sanofi had an obligation to analyze those [AE] reports for the FDA."); *Newman v. McNeil*, 2012 WL 39793, at *9 (N.D. Ill. Jan. 9, 2012 ("McNeil could have… analyzed the overall data…"); *Shipley*, 2015 WL 4199739, at *10 (rejecting argument that FDA already had data because manufacturer could have analyzed it); *Frye*, 2022 WL 4305656, at *8 ("[N]ewly acquired information… includes the analysis of data previously submitted."); *Barry v. Novartis*, 2022 WL 2373452, at n.9 (E.D. Va. June 30, 2022) ("[R]esults of data analyses previously submitted to the FDA may not have accurately captured the risks..").
[26] The other cases cited by Lilly are not persuasive to the extent—contrary to binding precedent— the decision require plaintiffs to plead around affirmative defenses or place the preemption burden

## II.     Plaintiff alleges that the inadequate warning caused her injury.

For her failure-to-warn claim under the Louisiana Products Liability Act, Plaintiff must demonstrate that Mounjaro "possessed a characteristic that may cause damage," and that Lilly "failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. Stat. §9:2800.57. Plaintiff also "must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury." *Stahl v. Novartis*, 283 F.3d 254, 265 (5th Cir. 2002). Plaintiff has alleged that Lilly did not warn her physician of the risk that GLP-1RAs can cause gastroparesis, FAC ¶¶ 90, 93, 112, 115, 116, 117; her doctor did not know of this risk, FAC ¶¶ 119-21; and the failure to warn caused her prescriber's decision and her resulting injury. FAC ¶¶ 120-25, 129-31. Nothing more is required. *See Baudin v. AstraZeneca*, 413 F. Supp. 3d 498, 509 (M.D. La. 2019) ("[T]he sufficiency of the warning is not before the Court at this motion to dismiss stage…").[27] As discussed below, Lilly's learned intermediary defense is premature at the motion to dismiss stage.

### A.  Lilly's learned intermediary argument is premature.

To prevail under the learned intermediary doctrine, Lilly must show *both* that 1) the warning provides "a clear and unambiguous reference to the adverse reaction suffered by the

---

on plaintiffs. *See Smith v. GE Healthcare*, 2020 WL 1880787, at *6-7 (W.D. La. Mar. 31, 2020) , R&R adopted without objection, 2020 WL 1875644 (Apr. 15, 2020); *Thomas v. Bracco*, 2020 WL 1016273, at *10 (W.D. La. Feb. 27, 2020), R&R adopted without objection, 2020 WL 1243389 (Mar. 13, 2020). The cases are also distinguishable because the plaintiffs did not plead *any* evidence of a causal association, *Smith,* 2020 WL 1880787 at *6, and the FDA "issued a revised warning … that no causal relationship … has been established." *Id.* at *7.

[27]*See also Guidry v. Janssen*, 206 F. Supp. 3d 1187, 1199 (E.D.La. 2016) ("Whether the defendants' warnings were adequate… goes beyond the scope of a motion to dismiss…"); *Jenkins v. Bristol-Myers*, 2015 WL 5012130, at *5 (E.D. La. Aug. 21, 2015); *Rayford v. Karl Storz Endoscopy*, 2016 WL 4398513, at *6 (W.D. La. June 22, 2016) ("learned intermediary doctrine is premature"); *McLaughlin v. GlaxoSmithKline,* 2014 WL 669349, at *5 (W.D. La. Jan. 6, 2014) (allegations showing that defendant "failed to warn patients and physicians of serious problems associated with Paxil" are adequate); *Harris v. Merck*, 2012 WL 5384720, at *4 (W.D. La. Nov. 1, 2012) (rejecting argument that plaintiff needs to allege what an adequate warning would have stated).

plaintiff," *and* 2) the "prescribing physician must also unequivocally testify that the warning was adequate to inform him or her of the risks…" *Stahl,* 283 F.3d at 267.[28] Significantly here, courts overwhelmingly conclude that the doctrine cannot be resolved on the pleadings. *See Brocato v. DePuy*, 2015 WL 854150, at *6 (E.D. La. Feb. 25, 2015).[29]

Additionally, "when a manufacturer fails to give adequate warnings or instructions, a presumption arises that the user would have read and heeded such admonitions." *Hinson v. Techtronic,* 126 F. Supp. 3d 747, 757 (W.D. La. 2015), *aff'd*, 644 Fed. Appx. 371 (5th Cir. 2016). In the learned intermediary context, there is a presumption that the prescriber would have read and heeded an adequate warning. *See Sharkey v. Sterling Drug,* 600 So. 2d 701, 711 (La. App. 1st Cir. 1992); *Xarelto*, 2017 WL 1393480, at *3; *In re Taxotere*, 2022 WL 245605, at n. 19 (E.D. La. Jan. 11, 2022). At this stage, Lilly does not attempt to—and cannot—rebut the heeding presumption.

Lilly nevertheless argues that the gastroparesis risk is "obvious." Lilly cites just one case granting dismissal under this theory, *Thomas*, 2020 WL 1016273 at *4, *R&R adopted without objection*, 2020 WL 1243389.[30] However, Thomas alleged that "the radiology community" was on "high alert," *and* that—*before* Thomas's treatment—"the FDA … ***revised the labeling to warn***

---

[28] *See also Timm v. Upjohn*, 624 F.2d 536, 539 & n.8 (5th Cir. 1980) (learned intermediary doctrine is jury question where prescriber testimony "not unequivocal; at best it is confused"); *Kampmann v. Mason*, 921 So. 2d 1093, 1096 (La. App. 5th 2006) (rejecting defense where manufacturer "did not present evidence from any medical professional").

[29] *See e.g., Ivory*, 2009 WL 3230611, at *4 ("learned intermediary doctrine is premature" at motion to dismiss stage); *Rayford*, 2016 WL 4398513, at *6 ("Whether Plaintiff will ultimately be able to offer sufficient proof to support the [warning] claim is a matter the Court may more fully address within the context of a motion for summary judgment or a trial…."); *McLaughlin,* 2014 WL 669349, at *5; *Jenkins*, 2015 WL 5012130, at *5.

[30] Lilly's summary judgment cases are distinguishable. *Stahl,* 283 F.3d at 266, 268 (prescriber unequivocally testified that warning was adequate); *Vesoulis v. ReShape Lifesciences,* 2021 WL 1909725, at *5 (E.D. La. May 12, 2021), aff'd, 2022 WL 989465 (5th Cir. Apr. 1, 2022) (prescriber testified that he knew of risk); *Jackson v. Johnson & Johnson*, 2012 WL 2428262, at *3 (W.D. La. June 25, 2012) (plaintiff's expert testified that label was adequate, and prescriber testified that Physician's Desk Reference identified risk and risk would not change prescribing decision).

***of the exact issue which is the subject of Plaintiff's failure to warn claim***." *Id.* (emphasis added). Here, Lilly does not warn that GLP-1RAs can cause gastroparesis, and Plaintiff does not allege that the medical community was on "high alert." Just the opposite.[31] Indeed, gastroparesis is difficult to identify and diagnose. FAC ¶¶68, 71. *See Holbrook v. Boston Sci.*, 487 F. Supp. 3d 100, 110 (D. Mass. 2020) ("Unlike *Thomas*, the Holbrooks' physician was not already on high alert…").

As explained in Argument section I(A)(1), Lilly did not inform doctors that Mounjaro could cause gastroparesis, that patients with gastroparesis may be asymptomatic or have non-specific symptoms, what symptoms to look out for to identify gastroparesis, or that doctors may need to test or monitor for gastroparesis. Lilly argues that stronger language would have made no difference, but "a mere reference to an adverse effect is not necessarily an adequate warning" because "[t]he warning must contain language that is adequate to reasonably inform the recipient (i.e., the doctor in a learned intermediary case) about the nature of the danger involved." *Stahl*, 283 F.3d at 267. *See also Thom v. Bristol-Myers Squibb*, 353 F.3d 848, 853 (10th Cir. 2003) ("The mere mention of a possible injury, however, is not necessarily adequate.").

At this stage, this Court should reject Lilly's argument that the label is adequate as a matter of law. *See Breshears v. Fla. Power,* 1999 WL 397396, at *2 (E.D. La. June 15, 1999) (adequacy of "warning about fumes in general" to warn of "particularly noxious fumes" is issue of fact); *Small v. Amgen,* 2 F. Supp. 3d 1292, 1298 (M.D. Fla. 2014) ("broad and general warning of infection" inadequate to warn about asymptomatic infections). Ultimately, Lilly's learned intermediary arguments are premature as Lilly cannot show an unambiguous gastroparesis warning or unequivocal prescriber testimony.

**B.  Plaintiff alleges that a warning would have altered her doctor's decision.**

---

[31] FAC ¶¶ 119-20 ("Plaintiff's prescribing physician(s) had no way to determine the truth..").

Plaintiff alleges that a different label would have altered the prescribing decision, FAC ¶ 120, even though "Plaintiff is not required to detail what an adequate warning would be and how an adequate warning would have caused Plaintiff's treating physician to act differently." *Jenkins,* 2015 WL 5012130, at \*5. Nor is Plaintiff "require[d]… to identify [her] treating physician…" *Id.*; *see also Lahaye v. AstraZeneca*, 2015 WL 1935947, at \*5 (M.D. La. Apr. 28, 2015); *Baudin*, 413 F. Supp. 3d at 510;  *Harris*, 2012 WL 5384720, at \*4 Lilly cites unhelpful cases where plaintiffs made ***no*** allegation that the inadequate warning made a difference or otherwise caused their injuries,[32] but Plaintiff alleges that Lilly did not warn Plaintiff's physician of a risk of gastroparesis, FAC ¶¶ 90, 93, 112, 115, 116, 117; her prescriber did not know of the risk, FAC ¶¶ 119-21; and this failure to warn caused her injuries. FAC ¶¶ 120-25, 129-31. Courts routinely find similar allegations sufficient. *See Batiste v. Stryker*, 2021 WL 1171880, at \*7 (M.D. La. Mar. 26, 2021).[33]

## III.    Plaintiff has stated a claim for express warranty.

This Court has found express warranty allegations sufficient where, as here, a drug manufacturer warrants the safety of its product in marketing materials or otherwise, and its statements are contrary to its knowledge. *Kaylor v. Eisai*, 2022 WL 983657, at \*5 (W.D. La. Mar. 20, 2022); *see also Guidry*, 206 F. Supp. 3d at 1199 ("[M]arketing materials may rise to the level of an express warranty if they make claims as to the product's safety."). In *Kaylor*, this Court permitted a claim based upon allegations that 1) defendants stated that their drug was "safe", 2)

---

[32]*See Flagg v. Stryker*, 647 Fed. Appx. 314, n.3 (5th Cir. 2016); *Celino v. Biotronik*, 536 F. Supp. 3d 89, 108 (E.D. La. 2021); *Brooks v. Amgen*, 2019 WL 507491, at \*4 (M.D. La. Feb. 8, 2019); *Pellegrin v. C.R. Bard*, 2018 WL 3046570, at \*4 (E.D. La. June 20, 2018) (did not allege abrasion caused injury); *Rhodes v. Covidien*, 2019 WL 2162845, at \*4 (E.D. La. May 17, 2019).

[33]*See e.g., Baudin*, 413 F. Supp.3d at 510; *Donald v. AstraZeneca*, 2017 WL 1079186, at \*3 (E.D. La. Mar. 22, 2017); *Lahaye*, 2015 WL 1935947, at \*3-5; *Jenkins,* 2015 WL 5012130, at \*5; *Brocato*, 2015 WL 854150, at \*6; *Bertrand v. Eli Lilly*, 2013 WL 4093556, at \*7 (W.D. La. Aug. 13, 2013); *Harris*, 2012 WL 5384720, at \*4; *Nelson v. Mylan*, 2010 WL 3339274, at \*5 (W.D. La. Aug. 3, 2010), R&R adopted, 2010 WL 3363039 (Aug. 24, 2010); *Ivory v. Pfizer*, 2009 WL 3230611, at \*4 (W.D. La. Sept. 30, 2009).

the drug caused cancer, and 3) defendants knew of the risk. 2022 WL 983657, at *5. The Court concluded that medical literature showing the cancer risk supported an inference that defendants suppressed information and induced patients to "use the drug under the ruse of safety." *Id.*

As in *Kaylor*, Plaintiff relies on the express warranties Lilly made to Plaintiff and her doctor by way of "Mounjaro's labels, websites, advertisements, promotional materials, and through other statements". FAC ¶¶ 37-38, 50-55, 135. Lilly marketed Mounjaro through various mediums and warranted that Mounjaro was safe to improve glycemic control. *See, e.g.,* FAC ¶¶ 37-38, 50-55, 134-135. As in the cases cited above, Plaintiff has alleged studies known to Lilly that GLP-1 RAs can cause gastroparesis, and that 1) Lilly's express statements about Mounjaro's safety downplayed that risk, and 2) Lilly induced Plaintiff and her prescriber to use and prescribe Mounjaro under the ruse of safety. FAC ¶¶ 59-79, 136-138, 144-146. Courts have found similar allegations sufficient. *See Boutte v. Stryker*, 67 F. Supp. 3d 732, 738-39 (M.D. La. 2014) (defendant represented that product was "'safe and effective' while knowing that the combined use of its products remained untested, ineffective, and unsafe"); *Baudin*, 413 F. Supp. 3d at 512 (defendant represented that drug was tested, safe, and effective despite knowledge to contrary).

Courts have also permitted claims when a plaintiff alleges that "a manufacturer suppressed information, gained a significant market share with false representations, or induced persons to use [a] drug under the ruse of safety, with knowledge that the drug is dangerous." *Kaylor*, 2022 WL 983657, at *5; *see also Huffman v. Squibb*, 2016 WL 6024532, *3 (E.D. La. Oct. 14, 2016) (defendants stated drug was superior to others, but knew it was more dangerous); *Harris*, 2012 WL 5384720, at *5 (false statements in marketing led to substantial market share). As in these cases, this Court should deny Lilly's motion because Plaintiff alleges that Lilly gained a significant

market share due to false representations about Mounjaro's safety. FAC ¶¶ 52-55, 66.[34]

## IV.    The First Amended Complaint is not a shotgun pleading.

The FAC bears no resemblance to a shotgun pleading where defendants must "fish a gold coin from a bucket of mud." *Lawson v. Lifepoint*, 2017 WL 4365814, at *4 (W.D. La. Sept. 29, 2017) (rejecting shotgun pleading argument where defendant could discern causes of action). The FAC straightforwardly alleges claims based on Lilly's drug, Mounjaro.[35] Lilly can easily decipher Plaintiff's claims against it as Plaintiff brings two causes of action with particularized factual support against two Defendants. *See* FAC ¶¶ 98-153; *See La. Fair Hous. Action Ctr. v. Plantation Mgmt.*, 2022 WL 204555, at *8 (E.D. La. Jan. 24, 2022) ("Plaintiff lays out its claims in a manner that introduces no ambiguity, masks no theories for recovery, and avoids lengthy and unnecessary duplication of allegations for each individual defendant accused of similar behavior.").[36] In fact, Count 1 refers to Mounjaro 44 times, and Count 2 refers to Mounjaro 20 times. FAC ¶¶ 98-153. It

---

[34] Lilly relies on distinguishable cases with bare bones allegations. *See Lussan v. Merck*, 2017 WL 2377504, at *3 (E.D. La. June 1, 2017) (did not allege specifics about statements or allege causation); *Dubroc v. Bristol-Myers*, 2019 WL 3756469, at *6 (M.D. La. Aug. 8, 2019) (did not allege causation); *Fuller v. Eisai*, 513 F. Supp. 3d 710, 723 (E.D. La. 2021) (alleged only statement that "Belviq was approved by the FDA" and did not allege that statement reached plaintiff or prescriber); *Pellegrin*, 2018 WL 3046570, at *5-6 (E.D. La. June 20, 2018) (merely recited elements); *Lewis v. Baxter*, 2017 WL 661324, at *5 (E.D. La. Feb. 17, 2017) (only alleged statement that product was "suitable and safe for use" or identify to whom defendants made statements); *Doe v. AstraZeneca*, 2015 WL 4661814, at *4 (E.D. La. Aug. 5, 2015) (did not allege specific statements beyond that product was safe or explain how statement was false).
[35] FAC ¶ 7 & n.1 (alleging how Lilly downplayed Mounjaro's risks by "mention[ing] gastroparesis without warning of the risk"); *id.* ¶ 90 (alleging Mounjaro label is inadequate as it "warns about the risk of Severe Gastrointestinal Disease, but gastroparesis is not specifically mentioned.").
[36] *See also Alexander v. Dresser*, 2022 WL 509366, at *5 (W.D. La. Feb. 18, 2022); ("[B]ecause the Amended Complaint describes the facts underlying the Plaintiffs' claims in a manner sufficient to notify Defendants of the claims against them[,] … it does not constitute an improper shotgun pleading."); *Adams v. Walker*, 2021 WL 1894865, at *2 (E.D. La. May 11, 2021) ("Despite its length, Plaintiff's Complaint is not a 'shotgun pleading;' Plaintiff very clearly brings seven distinct claims against three defendants. He supports those claims with a detailed, albeit cumbersome, recitation of facts."); *Jones v. Herlin*, 2013 WL 823420, at n.3 (W.D. La. Mar. 6, 2013) ("[M]ost, if not all of the facts are germane to each of the claims.").

is no matter that Plaintiff sometimes refers to the two Defendants collectively. *See Parker v. La. Dep't of Pub. Safety & Corr.*, 2021 WL 2697528, at \*6 (M.D. La. June 30, 2021) (rejecting argument that "lumping" defendants together was shotgun pleading); *Barrett v. Dresser*, 2021 WL 53658, at \*3 (W.D. La. Jan. 6, 2021).[37] Lilly argues that Plaintiff has not sufficiently pled whether Lilly caused her injuries, but Plaintiff specifically alleges that Mounjaro's inadequate warning was "a substantial factor in causing [her] injuries." *See e.g.,* FAC ¶¶ 129, 148. This Court should deny Lilly's motion because "additional information … regarding the specific nature of Plaintiff's claims is appropriately reserved for discovery." *Barrett*, 2021 WL 53658, at \*3.

## V.    This Court should reserve judgment on punitive damages.

Louisiana choice-of-law statutes permit application of state law on an issue-by-issue basis, *Energy Coal v. CITGO*, 836 F.3d 457, 459 (5th Cir. 2016), and thus another state's laws may govern punitive damages. Indiana, as Lilly's principal place of business and presumably where the bulk of Lilly's misconduct occurred, has an interest in punishing any reprehensible conduct within its borders. However, Lilly's motion to dismiss punitive damages is premature, and the record should be developed to know the nature, extent, and location of any conduct warranting punishment.

The choice-of-law inquiry is fact specific. *In re Phenylpropanolamine (PPA)*, 2004 WL 7332793, at \*3 (W.D. Wash. June 10, 2004) (denying motion to dismiss "as to those plaintiffs who have asserted a claim for punitive damages purporting to rely on Louisiana's choice-of-law statute and the punitive damages laws of other states"); *New Orleans Assets v. Carl E. Woodward,* 278 F. Supp. 2d 776, 780–81 (E.D. La. 2003) (denying motion for partial summary as to punitive damages

---

[37]Even Lilly's cases recognize that the issue is whether defendants can discern the claims against them. *See Noble Cap. Tex. Real Est. Income Fund v. Newman*, 2023 WL 3035411, at \*3 (W.D. Tex. Jan. 13, 2023); *Cain v. New Orleans*, 2016 WL 2849478, at \*5 (E.D. La. May 13, 2016). *Garig v. Travis,* 2021 WL 2708910, at \*19 (M.D. La. June 30, 2021), is distinguishable because the plaintiff lumped all defendants together and provided no support for each cause of action.

due to factual questions).[38] Under La. Civ. Code art. 3545, Louisiana law generally governs

punitive damages for injuries in this state, but La. Civ. Code art. 3547 creates an exception:

> if, from the totality of the circumstances of an exceptional case, it is clearly evident under the
> principles of Article 3542, that the policies of another state would be more seriously impaired
> if its law were not applied to the particular issue.

The principles set forth in Article 3542 include:

> (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute,
> including the place of conduct and injury, the domicile, habitual residence, or place of business
> of the parties, and the state in which the relationship, if any, between the parties was centered;
> and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful
> conduct and of repairing the consequences of injurious acts.

The policies in Article 3515, in turn, include:

> (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs
> of the interstate and international systems, including the policies of upholding the justified
> expectations of parties and of minimizing the adverse consequences that might follow from
> subjecting a party to the law of more than one state.

A decision requires the Court to review "the totality of the circumstances," *Duhon v. Union

Pac.*, 43 F.3d 1011, 1018 (5th Cir. 1995), and "compar[e] the policies and interests" of multiple

states. *Cain v. Altec,* 236 F. App'x 965, 969–70 (5th Cir. 2007). Indiana law may apply because

"punitive damages has more to do with the tortfeasor than with the victim," *Racko Prop. v. Alaba.

Great S.*, 2008 WL 754684, at *4 (E.D. La. Mar. 19, 2008), but such a determination is premature

because the choice-of-law analysis requires a developed record to weigh several factors about the

nature, extent, and location of Lilly's conduct warranting punitive damages.[39]

## CONCLUSION

For these reasons, this Court should deny Lilly's motion to dismiss.

---

[38] Plaintiff agrees with Lilly that Louisiana law governs liability issues.
[39] Plaintiff concedes that attorney fees are unavailable.

Dated: November 16, 2023   By: */s/ Rene F. Rocha*
           Rene F. Rocha
           Morgan & Morgan
           400 Poydras St., Suite 1515
           New Orleans, LA 70130
           Phone: (954) 318-0268
           Facsimile: (954) 327-3018
           rrocha@ForThePeople.com

           T. Michael Morgan
           Morgan & Morgan
           20 North Orange Ave. Suite 1600
           Orlando, FL 32801
           Phone: (407) 420-1414
           Facsimile: (407) 245-2289
           mmorgan@forthepeople.com

           Paul J. Pennock
           Morgan & Morgan
           350 Fifth Ave, Suite 6705
           New York, NY 10118
           Phone: (212) 738-6839
           Facsimile: (407) 245-3384
           ppennock@forthepeople.com

           Jonathan M. Sedgh
           Morgan & Morgan
           850 3rd Ave, Suite 402
           Brooklyn, NY 11232
           Phone: (212) 738-6839
           jsedgh@forthepeople.com

           Josh Autry
           Morgan & Morgan
           333 W. Vine St, St 1200
           Lexington, KY 40507
           Phone: (859) 899-8785
           jautry@forthepeople.com

           *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth above the foregoing was filed via the Court's

ECF/CM filing system which electronically served all counsel of record.


By:     */s/ Rene F. Rocha*
        Rene F. Rocha