UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JACLYN BJORKLUND** | **CASE NO. 2:23-CV-01020** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **NOVO NORDISK A/S ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss for Lack of Jurisdiction, or in the Alternative to Dismiss Plaintiff's Express Warranty Claim [doc. 73] filed pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6) by defendants Novo Nordisk A/S and Novo Nordisk North America Operations A/S (collectively, "NNAS"). Plaintiff opposes the motion. Doc. 79.

### I.
### BACKGROUND

This products liability suit arises from plaintiff's use of Ozempic (semaglutide) and Mounjaro (tirzepatide), two injectable prescription medications that have been approved by the FDA for control of blood sugar in adults with Type 2 diabetes. Both medications belong to a class of drugs called GLP-1 (glucagon-like peptide-1) receptor antagonists. Doc. 5, ¶¶ 3–6. Plaintiff, an adult resident of Louisiana, took Ozempic for more than one year, concluding in July 2023, and Mounjaro thereafter on prescription from her physician(s). *Id.* at ¶¶ 9–12. She alleges that her use of both drugs resulted in gastroparesis, "a disorder that slows or stops the movement of food from the stomach to the small intestine," which caused her to suffer

> severe vomiting, stomach pain, gastrointestinal burning, being hospitalized for stomach issues on several occasions including visits to the emergency room, teeth falling out due to extreme and violent vomiting, requiring additional medications to alleviate her extreme and violent vomiting, and throwing up whole food hours or even days after eating.

*Id.* at ¶¶ 14, 80. She further alleged that defendants "acknowledge that gastrointestinal events are a well known side effect of the GLP-1 class" but have "downplayed the severity of the gastrointestinal events" and "never . . . warn[ed] of the risk of gastroparesis[.]" *Id.* at ¶ 7.

Plaintiff filed suit in this court on August 2, 2023, against various Novo Nordisk entities (manufacturers of Ozempic) and Lilly (manufacturer of Mounjaro). Doc. 1. She raises claims of failure to warn and breach of express warranty under the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.52 *et seq.* Doc. 5. The first-served group of Novo Nordisk entities, namely Novo Nordisk Inc, Novo Nordisk Pharmaceutical Industries L P, Novo Nordisk Research Center Seattle Inc, Novo Nordisk U S Commercial Holdings Inc, and Novo Nordisk U S Holdings Inc., moved to dismiss her claims under Federal Rule of Civil Procedure 12(b)(6) and the court granted the motion as to the express warranty claim. Docs. 54, 66, 67. Novo Nordisk A/S and Novo Nordisk North American Operations A/S (collectively, "NNAS"), two Danish Novo Nordisk entities, were subsequently served and now move for dismissal of (1) all claims against them for lack of personal jurisdiction under Rule 12(b)(2) and (2) the express warranty claim under Rule 12(b)(6). Plaintiff opposes the motion as to the personal jurisdiction arguments. Doc. 79.

## II.
## LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the court's jurisdiction over a nonresident defendant. *E.g.*, *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). The court may determine jurisdictional issues through evidence outside the pleadings. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002). When the court rules on the motion without an evidentiary hearing, the plaintiff's burden is only to make out a *prima facie* case of personal jurisdiction. *Trinity Indus., Inc. v. Myers & Assoc., Ltd.*, 41 F.3d 229, 230–31 (5th Cir. 1995). At this stage the court must take uncontroverted allegations in the pleadings as true and resolve any conflicts in the parties' affidavits in the plaintiff's favor. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

Personal jurisdiction over a defendant exists if (1) the forum state's long-arm statute extends to the defendant, and (2) the exercise of such jurisdiction is consistent with due process. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Louisiana's long-arm statute extends as far as permitted by due process, merging these two factors. *Rainey v. J&S Truck Sales, LLC*, 614 F.Supp.3d 293, 299 (M.D. La. 2022) (citing *Petroleum Helicopters, Inc. v. Avco Corp.*, 834 F.2d 510, 512 (5th Cir. 1987)). The exercise of personal jurisdiction over a defendant comports with due process only if (1) the defendant has purposefully availed himself of the protections of the forum state by establishing "minimum contacts" therewith and (2) the exercise of personal jurisdiction

over the defendant does not offend traditional notions of fair play and substantial justice. *Allred v. Moore & Peterson*, 117 F.3d 278, 285 (5th Cir. 1997).

Minimum contacts may be established through either general or specific jurisdiction. *Ford v. Mentor Worldwide, LLC*, 2 F.Supp.3d 898, 903 (E.D. La. 2014). General jurisdiction arises from "continuous and systematic" contacts with the forum state, even when the cause of action bears no relation to those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). Specific jurisdiction, on the other hand, is case-linked and confined to "adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Only specific personal jurisdiction is at issue here. In the Fifth Circuit, courts evaluate the issue with a three-step analysis. *Deep South Comms., LLC v. Fellegy*, 652 F.Supp.3d 636, 652 (M.D. La. 2023) (citing *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). First, the court determines whether minimum contacts exist between the defendant and the forum state. Then the court considers whether the cause of action "arises out of or results from the defendant's forum-related contacts." *Id.* Finally, if the plaintiff satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that an exercise thereof "would be unfair or unreasonable." *Id.* (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). Plaintiff's burden on the first two prongs, as set out above, is only to make out a prima facie case. Meanwhile, the defendant's burden on the third prong is to establish a "compelling case" against the exercise of jurisdiction. *Walk Haydel & Assocs., Inc. v.*

*Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (quoting *Burger King*, 471 U.S. at 477).

## III.
## LAW & ANALYSIS

The First Amended Complaint contains no individualized allegations against NNAS, and instead generally alleges the involvement of all Novo Nordisk defendants in the manufacture and marketing of Ozempic. As NNAS notes, there are no allegations that the Danish entities directed any activities towards Louisiana or purposefully availed themselves of this state's benefits and protections. Plaintiff maintains, however, that jurisdiction attaches to these entities because they placed Ozempic into the stream of commerce, desiring that it would be sold in the United States and foreseeing that it would reach Louisiana.

The stream of commerce doctrine recognizes that a defendant may subject itself to a state's jurisdiction "by sending its goods rather than its agents into the forum." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011)). Accordingly, minimum contacts are established when a defendant delivers its product into the stream of commerce with the expectation that it will be purchased or used by consumers in the forum state. *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). "Under that test, mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce, but the defendant's contacts must be more than random,

fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.* (cleaned up).

Novo Nordisk A/S manufactures Ozempic and, according to FDA correspondence, is responsible for its assembly, labeling, and packaging. Doc. 79, att. 8, p. 53; doc. 78, att. 11, p. 202. According to its 2022 Annual Report: "Apart from ownership of the subsidiaries in the Novo Nordisk Group, activity within [Novo Nordisk A/S] mainly comprises sales, research and development, production, corporate activities and support functions." Doc. 79, att. 4, p. 105. The company's net sales of Ozempic in the United States for 2022 amounted to 38.75 million Danish Kroner (DKK)[1], comprising 64.8 percent of its worldwide sales of the product, and Novo Nordisk A/S emphasizes the country's significance in its financial outlook. *Id.* at 62, 34. Novo Nordisk A/S also has employees[2] in Louisiana, where it has conducted dozens of clinical trials (including twenty-five for Ozempic). Doc. 79, atts. 22–24, 15–19. Lake Charles, Louisiana, ranks as one of the top 20 areas in the country for rising Ozempic prescriptions. Doc. 79, att. 13. Finally, Medicaid reimbursements for Ozempic have risen steadily in Louisiana since 2019, reaching $98 million for 104,876 prescriptions for the first three quarters of 2023. Doc. 79, att. 14.

NNAS attempts to analogize this matter to *Nicastro*, supra, 564 U.S. 873. There a New Jersey worker had injured his hand in a metal-shearing machine manufactured in

---

[1] Plaintiff sets this figure at $5.6 billion US. The court used the currency converter available at https://www.xe.com/ in January 2024 and achieved roughly the same result.

[2] Plaintiff shows that Novo Nordisk also has lobbyists in this state, but the more recent ones are all affiliated with its subsidiary Novo Nordisk Inc. *See* doc. 79, att. 25. Two Novo Nordisk subsidiaries, Novo Nordisk Inc. and Novo Nordisk Pharmaceuticals, also have offices in Louisiana. Doc. 79, atts. 20 & 21. As plaintiff notes, a subsidiary's jurisdictional contacts may be imputed to the parent under an alter ego or agency theory. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 546 (5th Cir. 2014). The court has insufficient evidence, however, to make any such determination.

England. The Court rejected an assertion of personal jurisdiction over the manufacturer in New Jersey, noting that the machines were distributed through another entity, that only a few (one to four) of the machines ended up in New Jersey and that the manufacturer attended trade shows in several states but not New Jersey. Although the facts might establish an intent to serve the U.S. market, the Court held, there is no basis to find the manufacturer purposefully availed itself of the New Jersey market and thus no constitutional basis for exercising jurisdiction over the defendant.[3] 564 U.S. at 886–87.

Here, on the other hand, it appears Novo Nordisk A/S developed Ozempic and placed it into the stream of commerce with the expectation that it would reach every corner of the United States, including Louisiana. The record reflects the drug's growing popularity in this state, the sizable role of the United States in Ozempic's global market, and Novo Nordisk A/S's direct presence in the state through employees and clinical research. *Nicastro* demonstrates that a manufacturer's "broad desire to target the United States through a distributor" is not enough to establish specific personal jurisdiction. *Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C. Cir. 2014). But this case is more analogous to a number of matters where courts have found specific jurisdiction over a global manufacturer based on its cultivation of the U.S. market, the considerable number of sales in the forum state, and the failure to take any measure to exclude sales within the forum state. *E.g.*, *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 9–11 (1st Cir. 2018); *Collett v. Olympus Med. Sys. Corp.*, 437 F.Supp.3d 1272, 1279–80 (M.D. Ga. 2020); *Brady v. Anker*

---

[3] Justice Breyer's concurrence, which furnished the narrowest grounds for the decision and thus controls, emphasized that this decision did not alter the court's precedents on stream of commerce. *Ainsworth*, 716 F.3d at 178.

*Innovations Ltd.*, 2020 WL 158760, at *6 & n. 4 (S.D.N.Y. Jan. 13, 2020); *see also In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 2016 WL 5890022 (N.D. Ill. 2016) (plaintiffs established prima facie case of personal jurisdiction with evidence of substantial AndroGel sales in the United States and company's awareness of same). The case is even stronger here because, as with Samsung in a recent matter, Novo Nordisk used the forum state as a site for its research in developing the product that gave rise to this action. *See Lorenzen v. Toshiba Am. Info. Sys., Inc.*, 569 F.Supp.3d 109, 112–13 (D.R.I. 2021). Accordingly, Novo Nordisk A/S's voluntary and purposeful contacts with the forum state support an exercise of personal jurisdiction over this defendant.

As plaintiff acknowledges, there is little information publicly available about Novo Nordisk North American Operations A/S. Its name, however, suggests that it is a "link in the stream-of-commerce chain." *DePuy Orthopaedics, Inc.*, 888 F.3d at 780. Indeed, Novo Nordisk A/S's 2022 annual report states that sales growth of Ozempic "was driven by both North America Operations and International Operations." Doc. 79, att. 4, p. 38. Given the above findings relating to Novo Nordisk A/S's targeting of the U.S. market and Ozempic's success both nationally and in Louisiana, the court finds no need to order costly jurisdictional discovery into this subsidiary's functions. Instead, its apparent role as distributor and/or promoter of Ozempic in the United States provides sufficient minimum contacts for an exercise of personal jurisdiction. Finally, plaintiff's cause of action plainly arises out of both entities' forum-related contacts because she has alleged that she was injured through her use of Ozempic, the product manufactured by Novo Nordisk A/S and

targeted toward this state. Accordingly, plaintiff has made out a prima facie case of jurisdiction as to both NNAS defendants.

At the final step, then, it is NNAS's burden to demonstrate that requiring them to defend this suit in Louisiana would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945). The court looks to the following factors: (1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993) (citing *Asahi*, 480 U.S. at 112).

NNAS makes no arguments on these factors. "[O]nce minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Wright v. Davis*, 2008 WL 4999165, at *3 (S.D. Miss. Nov. 19, 2008) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). Although both NNAS defendants are Danish entities, they are also sophisticated global enterprises and have made no showing of the burdens of defending the suit in this forum. Meanwhile, plaintiff is a Louisiana citizen residing within the geographic territory of this court. It is likely that her prescribing physician(s) and the healthcare providers who treated her alleged gastroparesis also reside in the region. Accordingly, her interest in convenient and effective relief is high. The forum state's interest is also substantial under the second and fifth factors, given the sizable number of Ozempic prescriptions to Louisiana citizens and their alleged potential for causing injury in this state. Finally, the fourth factor weighs in favor of exercising

jurisdiction because of the number of prospective witnesses in this forum and the comparative convenience of travel to this forum for NNAS witnesses as opposed to requiring plaintiff and other individual witnesses to travel to Denmark or any other forum where NNAS might consider itself "at home." Accordingly, the motion to dismiss under Rule 12(b)(2) will be dismissed. Meanwhile, noting no opposition to the 12(b)(6) motion, the court will dismiss plaintiff's express warranty claim for the same reasons set forth in its prior ruling.

## IV.
## CONCLUSION

For the reasons stated above, the Motion to Dismiss for Lack of Personal Jurisdiction [doc. 73] will be **DENIED** and the Motion to Dismiss Plaintiff's Express Warranty Claim Pursuant to Rule 12(b)(6) will be **GRANTED**. Accordingly, the express warranty claim asserted against Novo Nordisk A/S and Novo Nordisk North America Operations A/S will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on the 18th day of January, 2024.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**